## ACTON, *Appellant*, v. DOOLEY.

1. **Estoppel by Conduct.** General principles in text-books, recognized in *Taylor v. Zepp*, 14 Mo. 482; *Bales v. Perry*, 51 Mo. 449; *Spurlock v. Sproule*, 72 Mo. 503, 50

2. ———: AGREEMENTS AS TO BOUNDARY LINES: ADVERSE POSSESSION. Agreements between co-terminous proprietors as to the dividing line made in ignorance of the true line, although sanctioned by law, do not strictly involve questions of estoppel; and their acts may be admissible as evidence of such an agreement, when not sufficient to establish an estoppel. An essential element of the validity of such an agreement is the mistake of facts under which it is made. Facts which establish an adverse possession are not to be confounded with those which create an estoppel by conduct. *Knowlton v. Smith*, 36 Mo. 507, 512, criticised; *Turner v. Baker*, 64 Mo. 218, approved.

3 ———: SILENCE. Silence in some cases will estop a party, but silence without knowledge, works no estoppel. *Collins v. Rogers*, 63 Mo. 515, and *Evans v. Snyder*, 64 Mo. 516, distinguished.

4. ———: CASE ADJUDGED. Plaintiff and defendant became the owners of adjoining twenty-five foot lots; the former in 1865, the latter in 1866. Defendant soon afterward, desiring to build, had his lot surveyed to ascertain its boundaries. Plaintiff was not notified of, and did not participate in, this survey, which included within its lines the eastern portion of plaintiff's lot, four and a half inches in width, and 155 feet in depth. Defendant excavated, and built the western foundation wall of his house, along the west line of the survey; he also built his west fence in connection with his west wall along the same line. Plaintiff then measured from the western line of the survey twenty-five feet, and at that distance therefrom, and parallel thereto, located the west line of his lot, along which, as his western boundary, he built his house, which was completed before that of defendant. Defendant had no knowledge of the mode by which plaintiff had located the west line of his lot, and did not know that plaintiff had built his house to a line located by such mode. After plaintiff and defendant had moved into their respective houses, plaintiff asked and obtained permission of the defendant to put some boards upon defendant's west fence, adopting said fence as the east wall of his wood-shed. Some time after the completion of the two houses, plaintiff complained of the projection of defendant's cornice two or three feet over his lot, and it was thereupon removed. In 1875, a new survey was made, and plaintiff then first discovered the appropriation by defendant of the strip of land four and a half inches by 155 feet, being the eastern portion of

plaintiff's lot. In ejectment for this strip of land, it was held that plaintiff was not precluded from recovery by reason of the facts stated: because, it was not shown, first, that any agreement had been made that the west line of defendant's survey should be regarded as the dividing line between the lots; second, that the plaintiff knew the true boundary line; or, third, that the defendant was induced to build to the west line of his survey, relying upon any acquiescence on the part of plaintiff in this line, or, in reliance upon his silence, representations or conduct. *Majors' Heirs v. Rice,* 57 Mo. 385, and *Taylor v. Zepp,* 14 Mo. 482, distinguished.

*Appeal from St. Louis Court of Appeals.*—This case is reported in 6 Mo. App. 323.

REVERSED.

*Franklin Ferriss* and *Fisher & Rowell* for appellant.

1. The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. 51 Mo. 449.

2. In order to estop appellant, it must appear that he did or said something that influenced respondent's grantor to locate or continue his improvements where they are. 72 Mo. 503; *Eitelgeorge v. The Mut. H. B. Asso'n,* 69 Mo. 52; *Hill v. Epley,* 31 Pa. St. 334; *Commonwealth v. Moltz,* 10 Barr 531.

3. Silence without knowledge works no estoppel; and if the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel. *Dezell v. Odell,* 3 Hill 215; *Crest v. Jack,* 3 Watts 240; *Hepburn v. McDonnell,* 17 S. & R. 383; *Dessaunier v. Murphy,* 22 Mo. 95; *People v. Brown,* 67 Ill. 437; *The D. C. R. Co. v. The D. G. L. Co.,* 43 Iowa 301.

*Lucien Eaton* for respondent.

1. Plaintiff has but a trivial cause of action. The value of the land claimed does not exceed $25. He seeks to destroy a house costing $13,500. His claim is technical, stale and without merit.

2. The principle of estoppel *in pais* is designed for

the benefit of one who is misled to his prejudice; the injury to him is the same whether his informant deluded him through ignorance, mistake or willful misrepresentation. *Hart v. Giles*, 67 Mo. 175; *Storrs v. Barker*, 6 John. Ch. 166; Herman on Estoppel, 417, § 416; *Miller's Appeal*, 84 Pa. St. 391, (5 Cent. Law. Jour. 450).

3. Where the owner stands silently by for years, while the occupant is making lasting and valuable improvements on property, he will be estopped from afterward enforcing a claim. 63 Mo. 515; 65 Mo. 316; *Morgan v. R. R. Co.*, 93 U. S. 716.

4. An agreement between adjoining owners fixing their common boundary, will be enforced by the courts, whether proved inferentially by long acquiescence or directly by expressed understanding. *Betts v. Brown*, 3 Mo. App. 20; 64 Mo. 218; 14 Mo. 482; 16 Mo. 273; 57 Mo. 384; *Allen v. Sales*, 56 Mo. 28; *Huntsucker v. Clark*, 12 Mo. 333; *Hamilton v. West*, 63 Mo. 93; *Thomas v. Pullis*, 56 Mo. 211; *Dolde v. Vodicka*, 49 Mo. 98; *Lindell v. McLaughlin*, 30 Mo. 28; 69 Mo. 52; *Highley v. Barron*, 49 Mo. 103; *Dibble v. Rogers*, 13 Wend. 539; *Soward v. Johnston*, 65 Mo. 102; *Melton v. Smith*, 65 Mo. 315; *Slagel v. Murdock*, 65 Mo. 522.

HENRY, J.—This is an action of ejectment, in which plaintiff seeks to recover a strip of land four and a half inches front on the north line of Carr street, in the city of St. Louis, by 155 feet in depth, which plaintiff claims is a part of lot number 5, in block 950. The petition is in the usual form, and the answer a general denial and the statute of limitations. There was a judgment for defendant, from which plaintiff appealed to the St. Louis court of appeals, where it was affirmed, and plaintiff has appealed to this court.

Plaintiff bought his lot, then unimproved, November 13th, 1865, and Lynch bought lot number 4, adjoining it. on the east, in December, 1866. Desiring to build on his

lot, Lynch had Cozzens to survey and ascertain its bound-aries. Acton was not notified of, nor did he participate in, the survey. It may be assumed, so far as the question now before us is concerned, that by this survey a parcel of plaintiff's lot, four and a half inches wide, was encroached upon. Soon after it was made, without any consultation with Acton, or anything said or done by him, Lynch exca-vated for his cellar, and built the foundation walls of his house, the west wall of which we assume was four and a half inches on Acton's lot. At the time of said survey, there were no stakes or corner stones on either of said lots, or contiguous lots, indicating their boundaries, and Acton and Lynch were equally ignorant of the true line between them. After Lynch's cellar wall was built, and before he began to erect the superstructure upon it, Acton commenced to build a house on his lot, and, instead of having a sur-vey made, located the west line of his lot by measuring twenty-five feet (the width of his lot) from Lynch's west wall, and completed his house before Lynch finished his. There is nothing in the testimony to show that Lynch knew how Acton ascertained his west line, or that Acton had built his house to the line ascertained as above stated. After Acton and Lynch had moved into their houses, Ac-ton asked, and obtained permission of Lynch, to put a few boards on Lynch's fence, running north and south from the west wall of Lynch's house, and built a coal-shed, adopting Lynch's fence as the east wall of the shed. This fence was made about the time that Lynch's house was erected. It does not appear whether the coal-shed was built after or before the completion of Lynch's house, but it was after Lynch moved into it. It appears also, that sometime after the completion of the two dwelling houses, Acton complained to Lynch of the projection of the cornice of Lynch's house, two or three feet, over on Acton's lot, and it was removed. The circuit court and the court of appeals held, that on the foregoing facts, Acton was es-

topped from claiming the strip of land in dispute, and the correctness of that view, is the only question before us.

In Bigelow on Estoppel, 438, it is stated that: "The following elements must be present in order to an estoppel 1. ESTOPPEL BY CONDUCT. by conduct: 1st, There must have been a misrepresentation or concealment of material facts. 2nd, The representation must have been made with knowledge of the fact. 3rd, The party to whom it was made must have been ignorant of the truth of the matter. 4th, It must have been made with the intention that the other party should act upon it. 5th, The other party must have been induced to act upon it. The term 'representation,' is used for convenience. It is not necessary that there should have been express statements. The representation may be implied from acts, silence or concealment." Again he says: "The rule is well settled, that if the representation containing all the foregoing elements has also been acted upon, the estoppel arises." Ib., 492. "But unless the representation is acted upon, the estoppel cannot arise," (Ib., 493;) and "it seems that it must be exclusively acted upon ; at all events, there can be no estoppel where the party claiming one, is obliged to inquire for the existence of other facts, and to rely upon them also in acting." Ib., 493.

In Herman on Estoppel, the doctrine is thus stated: "Before the party is concluded by an estoppel, it must appear, 1st, That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or the claim he proposes to set up. 2nd, That the other party has acted on the admission. 3rd, That the other party will be injured by allowing the truth of the admission to be disproved. When the acts and representations of the party must have influenced the other to do acts which he would not otherwise have done, and when a denial or repudiation must operate to the injury of such other party, the estoppel is created." Page 337. *Taylor v. Zepp*, 14 Mo. 482; *Bales v. Perry*, 51 Mo. 449 ; *Spur-*

*lock v. Sproule*, 72 Mo. 509, recognize these general prin-
ciples.

Most of the cases relied upon by respondent, arose
upon controversies between co-terminous proprietors re-
specting the line between them; and, where
they were not lines established by agreement
between the parties, in ignorance as to the
true line, they were lines acquiesced in by both parties, and
in reliance upon such acquiescence one of the parties had
made permanent valuable improvements up to the line,
and on the land in dispute. The former cases are frequently
cited on the subject of estoppel, while, strictly speaking,
they do not involve a question of estoppel, although fre-
quently, but incorrectly, we think, placed in that class of
cases. *Turner v. Baker*, 64 Mo. 218, belongs to that class.
There, certain acts of co-terminous proprietors were held
admissible as evidence to prove an agreement between the
parties, which the law sanctions, by which a division line
was established, both parties being in ignorance of the true
line; but the facts were not held to be such as would create
an estoppel. In many of the cases which have been decided
on the ground of estoppel *in pais*, the facts, as in *Turner
v. Baker*, might have been relied upon as evidence of an
agreement, and the case might have been decided on that
ground, as well as that of estoppel. In *Knowlton v. Smith*,
36 Mo. 512, it was said, that although parties agree upon
a division line, under a mistake of facts, neither of them
is precluded from claiming to the true line, unless the rights
of innocent third persons have intervened; but *Turner v.
Baker* announces a different doctrine, and one, which we
think more in accord with reason and authority. The
mistake of facts is the very element which makes such an
agreement valid. If the parties are not mistaken as to
where the true line lies, an agreement between them by
which a different line is established, which gives a portion
of the land of one to the other, would be void under the
statute of frauds. The facts which will establish an ad-

2. ——: agree-
ments as to boun-
dary lines: ad-
verse possession.

verse possession, are not to be confounded with those which will create an estoppel *in pais*, as seems to have been done in *Knowlton v. Smith.* Lynch's possession was certainly adverse to Acton, and had it continued long enough in him and his grantee, (the defendant,) would have barred a recovery by Acton.

Here it may be observed that *Collins v. Rogers* and *Evans v. Snyder*, 63 and 64 Mo., are wholly inapplicable to the case at bar. They decide that where the owner of land, knowing that he is such, stands by silently, and sees the occupant making lasting and valuable improvements upon the property, he will be estopped from claiming it. Silence in some cases will estop a party, "but silence without knowledge works no estoppel." 31 Pa. St. 334. "If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them, even though they would be conclusive against his right, if not contradicted." "There is a wide difference between silence and encouragement." "But there is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts, which if known would have made it his duty to speak or act." 6 Hill 16; 14 Cal. 368. Acton knew that he owned lot number 5, but did not know where the line ran. He did not know that a portion of Lynch's wall was on his lot. He and Lynch were equally ignorant of the true line, and had equal opportunity to ascertain it. Hence, the doctrine of *Collins v. Rogers* and *Evans v. Snyder*, *supra*, has no application here.

This case is also distinguishable from *Taylor v. Zepp* and *Majors v. Rice*, and other cases of that class in which one or both of the parties had the line ascertained by survey, and both acquiesced in it, and, relying upon such acquiescence one made valuable improvements to the line thus ascertained, and claimed an estoppel against the other. Under the authorities herein reviewed, an estoppel *in pais* did not arise, upon the facts in

3. ——: silence.

4. ——: case adjudged.

this case.   Acton neither misrepresented nor concealed any material fact, for he was as ignorant as Lynch of where the true line ran.   He made no representation whatever to Lynch.   Lynch was not induced by anything said or done by Acton, or any silence on his part, either to build his cellar wall, or to rear his superstructure upon it.   It is not shown that he knew the fact, that Acton had measured twenty-five feet west from Lynch's wall, to ascertain the western line of his own lot.   Lynch does not state that anything said or done by, or the silence of Acton induced him either to build his fence, cellar wall or house, or after the wall was made, to continue the erection of the house.

It appears that after Acton and Lynch moved into their respective houses, Acton had permission from Lynch to use his fence as the east wall of a coal-shed which Acton built on his own lot, but it nowhere appears that Lynch's improvements were not then completed, or that Lynch, in consequence of such recognition of the line by Acton, made any further improvements.   In fact, the evidence clearly shows that not by anything said or done by Acton, or by his silence, was Lynch induced or encouraged to make his improvements to the west line, as ascertained by Cozzens, but that he relied exclusively upon that survey.   The fact that Acton had permission to use Lynch's fence as a wall for his coal-shed, that he complained to Lynch that his cornice projected several feet over on his lot, and that he ascertained the western line of his lot by measuring twenty-five feet from Lynch's wall, might be admissible as evidence to prove an agreement between the parties to establish the Cozzens line as the true line, if there were not in the case the positive testimony of both Lynch and Acton that there was no such agreement.   There is no claim that there was an agreement, and nothing is relied upon but an estoppel *in pais*.   There is an absence of nearly all the elements of an estoppel as against Acton ; and Lynch could with more propriety be held to be estopped from disputing the Cozzens line, in a controversy in which that question should

arise between them, wherein Acton should contend for that line. For instance, let us suppose that, after Acton's house was completed, Lynch had discovered that Cozzens had, by mistake, located his west line five feet east of the true line, and sued Acton for that strip, which would embrace the east wall of Acton's house, the latter would have had a case of estoppel against Lynch, analogous to that which was declared against Majors in *Majors v. Rice, supra.* Lynch had the line run, adopted it as the true line, and built to it. Acton knew that Lynch had done so, and, supposing that Lynch had ascertained the true line, recognized it as such, but gave no expression of that recognition, of which Lynch was cognizant, until after the latter had completed his improvements. Proceeding upon the impression made upon him by Lynch's conduct, he erected his dwelling house, which, by the case supposed, occupied five feet of Lynch's lot. Can there be any question that these facts contain more of the elements of estoppel against Lynch than are found in the same facts to create an estoppel against Acton? "Silence without knowledge works no estoppel," and if Acton was ignorant of the true line and did not do or say anything to induce or encourage Lynch to build to the Cozzens line, what blame attaches to him, for recognizing the line, on Lynch's representation that it was the true line, or how was Lynch injured by Acton's recognition of the Cozzens line as the true one? All that can be said is, that by Acton's conduct, if Lynch was aware of it, it gave Lynch additional assurance that he had erected his house and other improvements to the true line. But that by no means creates an estoppel under any authority to be found in the books. The judgment is reversed and the cause remanded.

NORTON, J., CONCURRING.—I think the evidence in this case establishes the fact that Acton accepted the line as located by the survey of Cozzens as the true line between

his lot and Lynch's lot, but there is a lack of evidence tending to show that by reason of such acceptance of Acton, Lynch was induced to erect the superstructure of his house on the foundation built by him before Acton's acceptance of the line established by Cozzens as the true line, and it is for this reason that I concur in this opinion. Had the evidence shown that Lynch was induced to go on and complete his building by reason of the fact that Acton had accepted the line as located by the Cozzens survey as the true line, I think Acton would have been estopped from asserting that such line was not the true line.