Fairbanks & Co. v. DeLissa.

FAIRBANKS & COMPANY, Appellants, v. A. DeLISSA, Respondent.

Kansas City Court of Appeals, May 20, 1889.

1. **Contract**: WARRANTY OF WIND MILL CONSTRUED TO INCLUDE TANK. Defendant contracted with plaintiffs for the purchase of a certain wind mill, tank and fixtures — an appliance for drawing and storing water for the use of stock. On the said contract were endorsed certain warranties of "the within ordered wind mill." *Held*, the court must construe the contract in the light of the circumstances and hold the warranty includes the tank, pump and mill,—the whole plant.

2. ———: ACTION ON : COMPLIANCE. In an action on a contract plaintiff must allege and prove a substantial compliance to entitle him to recover.

3. ———: ———: WAIVER OF COMPLIANCE : ESTOPPEL. Upon plaintiff's carpenter putting the machinery in place and setting it to operating defendant objected to the tank, and doubted its sufficiency, but being assured it would tighten by use, signed a receipt by which he acknowledges the receipt of the wind mill, etc., "in good order as per contract," etc. *Held*.

    (1) Such receipt can not operate to bar defendant's right to show the truth in the controversy, as, to constitute a waiver, there must be both knowledge of the defect and acquiescence.

    (2) Nor can it operate as an estoppel, as plaintiffs have never acted upon—have never parted with anything or any right upon the faith of this receipt.

4. ———: QUANTUM MERUIT : INSTRUCTION. An instruction opening the way for a verdict for plaintiffs on *quantum meruit*, examined and approved.

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED

Statement of the case by the court.

It seems that plaintiffs are manufacturers and dealers in wind mills and fixtures, etc., at St. Louis, and defendant a farmer and stock raiser near Liberal, Barton county, Missouri. On September 6, 1884, defendant contracted with plaintiffs for the purchase of a certain wind mill, tank and fixtures—said contract being in writing—and defendant agreeing to pay therefor, in installments, at future dates the sum of one hundred and fifty-nine dollars, but the title to the property was to remain in Fairbanks & Co. until the same was paid for. DeLissa was to furnish the materials for constructing the tower for the mill, and to prepare the foundation for the structure, while Fairbanks & Co. agreed to erect and put the same all in place within a certain limited time.

In connection with the contract Fairbanks & Co. entered into the following warranty: "We hereby warrant the within ordered wind mill to be well made and of good material. We warrant it to furnish more power, to be self-regulating, and to be stronger and more reliable in storms, than any other mill made. We will furnish, free of charge, the parts necessary to make good any defect in workmanship or material, for the term of one year from date. We will recognize no alterations or changes of this warranty. It must stand as printed.

"FAIRBANKS & Co."

Afterwards, on or about the first day of November, 1884, Fairbanks & Co. sent a carpenter to DeLissa's farm in Barton county, Missouri, for the purpose of building the tower, and placing the machinery for said mill and pump. He went to DeLissa, told him what he had come for, and DeLissa showed him the place designed for the mill and pump; had all the material brought to the place, and gave the carpenter instructions where to build the tower and place the fixtures.

The construction was completed on the ninth and tenth days of November, 1884. DeLissa was at the place part of the last day, and when the work was completed by the carpenter, he (Regnier) and DeLissa put the machinery in operation, turned the water into the tank, and let it run for several hours; when the water was turned into the tank it leaked considerably, and DeLissa, at the time, made objections to it. The carpenter told him that new tanks leaked more or less at first. Aafterwards on the same evening the work was finished, the carpenter presented to DeLissa the following instrument of writing, to-wit:

"November 10, 1884.

"Received from Fairbanks & Co. one ten-foot Eclipse wind mill and pump, in good order, as per contract dated September 6, 1884. Contract says: 'Fairbanks & Co. to send builder about October 1, 1884. If the purchaser delays having mill built longer than thirty days after above date, then this order shall become due and payable, same as though the mill had been built at the above date given.'

"The purchaser agrees to pay freight, furnish lumber, put in foundation, board builder, and take him back to the station.

"A. DeLissa,"

with the request that DeLissa should execute it, saying that it would be necessary in order to show the house that the work had been done. DeLissa did sign it, and on the next morning took the carpenter and his tools to Liberal, the railway station. Nothing more was heard of the matter until DeLissa wrote a letter to Fairbanks & Co. at St. Louis, dated November 15, 1884, complaining of the wind mill, and particularly of the tank, that it would not hold water, etc. To this Fairbanks answered, encouraging DeLissa in the belief that all tanks leaked in the beginning, but that it would cease to leak, etc.

DeLissa continued the trial of the mill and tank for some three weeks thereafter, but it would appear from the testimony that the tank proved worthless and entirely unfit. DeLissa, thereupon, on December 6, 1884, advised Fairbanks & Co. of his unwillingness to retain the mill and fixtures and notified them to come for or send and remove it from his premises.

Fairbanks & Co. refused so to do, and failed and refused to send any one to put the mill and tank in order. DeLissa abandoned the attempted use of the mill and tank and held the same subject to the order of Fairbanks & Co. Plaintiffs brought this action for the contract price, and on the trial in the circuit court a verdict and judgment was rendered for defendant, and the cause is now here on appeal by the plaintiffs.

*Tucker, Cole & Dye*, for the appellants.

(1) The stipulations in the contract are not dependent, so far as the obligation to build is concerned, if such an obligation can be drawn from the contract at all. *Robinson v. Harbour*, 52 Miss. 795 ; Pars. on Cont. [5 Ed.] p. 527 ; *Turner v. Mellier*, 59 Mo. 526 (general rule stated, pages 535 and 536). The only element of damage was defects claimed in the tank, and some trifling matter about the shut-off ; otherwise the contract was completed, even as defendant claimed it should have been done. In such cases, suit is permitted upon the contract, and the measure of damages is the difference between the thing really done, and as it should have been done, under the contract. *Haysler v. Owens*, 61 Mo., 270 ; *VanBuren v. Bigges*, 11 Howard (U. S.) 462 ; Add. Con. [Morgan's Ed.] p. 547, sec. 864; Bish. Cont. [Enlarged Ed.] sec. 1421. (3) The acceptance signed and delivered by the defendant, under the pleadings in the case, and under the circumstances as detailed in evidence, was conclusive. Bish. Cont.

[ Enlarged Ed. 1887]. secs. 792, 795, 798, 804, 805 and 808. *Johnson County v. Lowe*, 72 Mo. 637 ; *Yeats v. Ballentine*, 56 Mo. 530 ; *Keller v. Oberrich*, 30 N. W. Rep. 524, and cases cited ; Benj. Sales, sec. 566. ( 4 ) The question of acceptance, under all the facts in this case, made it a pure question of law, and should not have been submitted as a question of fact for the jury. *Glass v. Gelvin*, 80 Mo. 287 ; *Taylor v. Fox*, 16 Mo. App. 527. ( 5 ) The agent, Regnier, had no power to take from the defendant anything but an unequivocal and written acceptance of the property and work, which was known to the defendant. Such an agent has no power to bind his principal, beyond the scope of his authority. *Shepherd v. Larkin*, 79 Mo. 264. ( 6 ) The court should have sustained the motion for a new trial, and set aside the verdict of the jury, because it was against the entire current of the evidence. *Taylor v. Fox*, 16 Mo. App. 527 ; *Ackley v. Staehlin*, 56 Mo. 558, and cases there cited.

*Buller & Timmonds*, and *Thurman, Wray & Stephens*, for the respondent.

(1) The first instruction asked by appellants was properly refused by the court. The court could not declare, as a matter of law, that the receipt offered in evidence by plaintiff, and referred to in the instruction, would of itself preclude an inquiry into the nature of the transaction regardless of the intention of the parties. *Bigbee v. Coombs*, 64 Mo. 529 ; *Grumley v. Webb*, 44 Mo. 444 ; *Alexander v. Moore*, 19 Mo. 143 ; 1 Greenl. on Ev. [ Redfield's Ed. ] sec. 305 ; *Carroll v. Railroad*, 14 Mo. App. 498 ; *Riley v. Kershaw*, 52 Mo. 226. (2) The court did not err in refusing the second instruction asked by appellants. It assumes a fact which was in issue and of which, on defendant's theory of the case, there was no proof, viz.: That the defendant accepted the wind mill, pump, tank and fixtures. Such an

instruction would clearly be erroneous. *Wilkerson v.* *Thompson*, 82 Mo. 327 ; *Peck v. Ritchey*, 66 Mo. 114 ; *Mathews v. Railroad*, 26 Mo. App. 75 ; *Comer v. Taylor*, 82 Mo. 347 ; *Railroad v. Waldo*, 70 Mo. 632. (3) The signing of the receipt under the facts supposed by the fifth refused instruction could not operate as an estoppel against defendant, and it was not error to refuse the instruction. *Acton v. Dooley*, 74 Mo. 67 ; *Miller v. Anderson*, 19 Mo. App. 71 ; *Bales v. Perry*, 57 Mo. 452 ; *Spurlock v. Sproul*, 72 Mo. 510. (4) The sixth refused instruction could not properly have been given. *Spohn v. Railroad*, 87 Mo. 74 ; *Beauchamp v. Higgins*, 20 Mo. App. 514. (5) The propriety of the seventh instruction, asked by plaintiffs, will be seen by examination of the contract and warranty referred to and set forth at the beginning of the abstract filed by appellant. The mill and fixtures are referred to together throughout the contract. The term mill, as used in the warranty, was evidently intended to cover all the machinery, and appurtenances to be used in supplying water for defendant's cattle, as erected by plaintiffs on defendant's premises, and they will be held to such interpretations, as defendant had a right to place on it, notwithstanding they may have secretly designed it as a trap to ensnare and deceive their customers. *Bruner v. Wheaton*, 46 Mo. 366. (6) The first instruction given by the court, at the instance of the defendant, stated the law correctly on the question of the effect of the receipt. *Alexander v. Moore*, 19 Mo. 143 ; *Hayner v. Churchill*, 29 Mo. App. 684. (7) The instructions given by the court, as a whole, present the law upon every matter in issue in the case, and this is all that can be required. *Boone v. Railroad*, 20 Mo. App. 232 ; *Turner v. Loler*, 34 Mo. 461 ; *McKeon v. Railroad*, 43 Mo. 405 ; *Muehlhausen v. Railroad*, 91 Mo. 346. (8) The evidence showed that the wind mill, without the tank, was of no value whatever for the purpose for which it was purchased and erected,

and that the tank wholly failed to hold water, and consequently could not be used. That plaintiff reserved the right of property in mill, tank, and fixtures till they should be paid for by defendant. That as soon as defendant ascertained that the mill and fixtures together could not be used for the purpose intended, and that plaintiffs would not place them in condition to be used, he notified the plaintiffs that they might remove them from the premises, and that he would not accept or pay for them. Under these circumstances, we contend the consideration for defendant's alleged promise to pay the amount sued for had wholly failed, and he could not be held liable. This is evidently the view the jury took of the case, and their finding being based upon legal and competent evidence, and warranted by proper instructions, should be conclusive. *Compton v. Parsons*, 76 Mo. 456 ; *Culbertson v. Hill*, 87 Mo. 553 ; *State to use v. Schneider*, 35 Mo. 557 ; *Murphy v. Gay*, 37 Mo. 535 ; *Barr v. Baker*, 9 Mo. 350 ; *Patterson v. Camden*, 25 Mo. 21. (9) Plaintiffs were bound by the statement made by Regnier, their agent, that "the tank would quit leaking, and that if it did not work, the company would make it work." *Franklin v. Ins. Co.*, 42 Mo. 458 ; *Hayner v. Churchill*, 29 Mo. App. 684 ; *Courtney v. Boswell*, 65 Mo. 196.

*Tucker, Cole & Dye*, in reply.

(1) The first instruction, refused the plaintiffs' did not "declare as a matter of law, that the receipt, offered in evidence, would of itself preclude an inquiry into the nature of the transaction." (2) The fourth, fifth, and sixth instructions asked by plaintiffs, and refused, presented the law as we take it, upon a state of facts, which, if true, and the instructions had been given, ought to have caused a different result. *Beauchamp v. Higgins*, 20 Mo. App. 514. (3) In this case there was an actual sale, transfer and delivery of the things sold,

and with them an express warranty. They were in the possession of the defendant, and since the erection, have constituted a part of the improvements and fixtures of his farm. In such a case, there can not be interposed the defense of total failure of consideration, unless the thing sold is wholly worthless for any purpose. *Walls v. Gales*, 6 Mo. App. 242; *Brown v. Weldon*, 27 Mo. App. 251, and case cited. (4) We do not think counsel can be serious in his position that this is not a sale *in præsenti*. The contract was executed, the things were there present, with full opportunity for inspection. So the reason for the distinction in applying the rule to cases of sale and delivery *in præsenti*, and refusing it when by the terms of the sale, delivery is postponed to a time *in futuro*, finds no support in the facts of this case. *Brown v. Weldon, supra*. (5) After, by his act of placing the workman before his employer in the atti-, tude of having finished the structure, inducing them to pay for it in full, and knowing at the time what would be the effect, to now ask this court to take the promises and assurances of Regnier, and by them bind the plaintiffs, is perfectly absurd. If this structure was not completed according to the contract, performance was prevented by the defendant in his generous act toward the workman, at the cost and expense of the plaintiffs; and where performance is prevented by the act of the party himself, he can not complain. *Park v. Kitchen*, 1 Mo. App. 357; *Baker v. Railroad*, 19 Mo. App. 321.

GILL, J.—There are two counts in plaintiffs' petition—one being based on the special contract between defendant and themselves, the other on a *quantum meruit*. By the special contract plaintiffs, in effect, obliged themselves to furnish a certain wind mill, tank, etc., and put the same in place on defendant's farm,

and in consideration thereof defendant agreed to pay one hundred and fifty-nine dollars in two installments at future dates.

In seeking to recover on this contract, it is clear plaintiffs' must show substantial compliance on their part or fail.

It is contended that the warranting "the within ordered wind mill," endorsed on the back of the contract, does not cover the *tank* used in connection therewith. This position is not tenable. The word "wind mill" used in the contract of warranty refers to the whole machine as ordered by the defendant. Plaintiffs contracted to supply defendant with an appliance for drawing water and storing it for use of defendant's stock. Defendant was as much concerned in the tank or in the pump as in the mill proper. We construe the contract in the light of the circumstances, and so construing we must hold that the warranty includes tank, pump, mill—the whole plant.

Now the defense to plaintiffs' claim on the express contract was that plaintiffs had failed to comply therewith, in that the machine furnished was not of the quality agreed to be furnished, the particular defect alleged being a worthless tank and that plaintiffs on being notified of such defect had failed and refused to remedy the same. If the machine was so defective and worthless, as claimed, then plaintiffs, by the terms of their contract, were in duty bound "to furnish free of charge the parts necessary to make good any defect in workmanship or material." It is undisputed that defendant did complain of substantial defects, and it is equally undisputed that plaintiffs refused to cure the defects.

If then the machine was substantially imperfect, as claimed, defendant could not be held on the count for an express contract *unless* he had waived such defect, and unqualifiedly accepted the machine as a compliance with the contract.

This brings us to the receipt or statement furnished by DeLissa to Regnier, the carpenter, November 10, 1884, when the machine was put up. By such receipt DeLissa acknowledges the receipt of the wind mill, etc., "in good order, as per contract dated September 6, 1884." Plaintiffs claim this an absolute and unqualified acceptance of the machine, so that thenceforward defendant will not be heard to dispute its quality or character. The execution of this receipt, under the circumstances as detailed in evidence by both DeLissa and Regnier, can not thus operate to bar defendant's right to show up the truth in the controversy.

It is quite clear, from all the testimony on this point, that such receipt was nothing more than a voucher to this hired carpenter, by which he could show to the plaintiffs, his masters, that he had performed the work of putting in place the machinery they had sold to defendant DeLissa, and the most that can be claimed for such statement is that defendant DeLissa was satisfied with the work as performed by such carpenter.

Nor is DeLissa now complaining of Regnier's work, but charges the fault on the appliance furnished by plaintiff and simply set in place by this carpenter. More than this, defendant, at the time, complained of the tank, and expressed his doubts if it could ever be of any value.

He was assured however that as the tank was used, and became saturated with water, its faults would disappear—and if not that the plaintiffs would furnish another.

It would seem that the jury were well supported in their finding that there was no acceptance of the machine as a full compliance with the contract. Such receipt may be explained and read in the light of surrounding and contemporaneous circumstances. *Grumley* *v.*

*Webb*, 44 Mo. 455; *Bigbee v. Coombs*, 64 Mo. 529; *Alexander v. Moore*, 19 Mo. 143.

To constitute waiver there must be both knowledge of the defect and acquiescence. *Johnson County v. Lowe*, 72 Mo. 639. DeLissa was suspicious of the tank, and so expressed himself to the carpenter, placing it, but he never expressed himself ready to accept it in its imperfect condition.

Neither did the giving this receipt to the carpenter, Regnier, operate as an estoppel on defendant, and preclude him from thereafter showing, in defense of an action for the purchase price, the machine to be imperfect and worthless.

It is not shown that plaintiffs ever parted with anything on account of this receipt, unless it be that they paid Regnier for his labor in setting up the machine. But they were compelled to pay for his services, regardless of the quality of the machine. So that whether he reported the windmill a perfect or imperfect machine, plaintiff would, doubtless, have paid him for his services which he rightly performed. Since then the plaintiffs have never acted upon faith of this receipt—have never parted with anything, or any right on that account, there is no estoppel. Bigelow on Estoppel, 438; *Acton v. Dooley*, 74 Mo. 67.

We have examined with care the instructions, those given and those refused, and it would seem, that, in the six instructions given, every substantial claim or defense was fairly presented to the jury. They were, in their entire scope and meaning, quite favorable to the plaintiffs.

In instruction numbered six the court opened the way for a verdict for the plaintiffs on the second count of the petition (on *quantum meruit*), had the jury found the facts to so justify. By said instruction the jury

was in effect told that even though they might find that plaintiffs had failed to comply substantially with their contract to furnish said mill, etc., yet, if the jury found "that the plaintiffs erected on the defendant's premises a windmill and tank, and that the same was of value to the defendant, and that he accepted and used the same, then they would find for the plaintiffs on the second count of the petition for the actual value of the mill and tank—not exceeding the contract price—after deducting such damages as have resulted to the defendant from a breach of said contract, and that the measure of damage was the reasonable and necessary cost to make said windmill and tank conform to the contract." Of this instruction plaintiffs have no ground to complain. *Haysler v. Owen,* 61 Mo. 274.

The cause was fairly tried, and as we detect no reversible error the judgment is affirmed. All concur.