Harrison v. McReynolds.

# HARRISON, Appellant, v. McREYNOLDS et al.

### Division Two, July 2, 1904.

1. **ESTATE BY ENTIRETY: Husband and Wife: Decree in Partition.** A decree in partition setting off to a husband and wife lands by her in part inherited from her father and in part by him purchased from the other heirs, does not make them tenants by the entireties, but tenants in common.

2. **DOWER: Limitations.** The widow's dower in lands owned by her husband as a tenant in common with her, must be asserted within ten years after his death or be barred by the statute of limitations.

3. **WIDOW: Estoppel.** After a married woman becomes discovert she stands before the law just as any other person *sui juris*, and must be held to answer to the same law of estoppel in claiming land.

4. **ESTOPPEL: Admission in Pleadings.** An admission in the answer that the widow did not discover that the deed executed by her and her husband did not convey to defendants her interest in the land in suit because of a misdescription until about the time she conveyed it to plaintiff, is binding on them in the consideration of their plea of estoppel.

5. ————: **Minor.** A minor is incapacitated by infancy to estop herself from claiming her inheritable interest in land.

6. ————: **Widow: Division of Property.** A married woman and her husband undertook to convey the land in suit to one of his children as trustee for the rest, her interest having been inherited from her father, and his acquired by purchase from the other heirs, but the deed misdescribed the land and hence conveyed neither her legal nor equitable title. After her husband's death, his children divided the same among themselves, the division being made in her absence and without any consultation with her; but she was notified of the matter afterwards and made no objection, and the child to whom the land fell improved it. *Held*, in view of all the evidence, that she did nothing to mislead them, and that they did not rely on anything she said in making the division, and hence her grantee is not estopped to assert title to the land.

7. ———: ———: ———: **Personal Property.** In such case the fact that at the time they notified her of the division they told her she could keep all the personal property, to which she was entitled anyhow, since it amounted to less than $400, does not in anywise affect the question of estoppel.

8. ———: ———: **Silence.** Silence without knowledge works no estoppel. If the persons who assert estoppel could by an examination of the records have discovered that an uneducated widow's interest in the land was not conveyed to them by the joint deed of herself and her husband, because the deed did not describe the land as was supposed, her silence, when informed that they had divided up the land without consulting her, does not estop her from afterwards asserting title to that interest.

9. ———: **Grantee: Notice.** A grantee of a person who was estopped to assert an interest in land takes with notice of the facts which would estop his vendor, and stands in the same relation to the persons asserting estoppel that the vendor would had not the vendor sold his interest.

10. **LACHES: Pending Suit.** While a suit is pending to correct a misdescription in a deed, the party against whom that suit is brought can not be charged with laches in not instituting ejectment while it is pending.

11. ———: **Rents: Improvements: Ignorance.** Where a widow who had joined her husband in making to defendants a deed which was ineffective to convey the land because by mistake in the description it did not describe the land, was possessed of little education, and did not know her legal rights in the matter, but employed an attorney to examine the title after defendants had divided the land up among themselves, and they have since had the rents and profits, she or her grantee ought not to be charged with laches in not bringing ejectment until after improvements were made thereon, but the improvements, if made in good faith, should be paid for before plaintiff should be permitted to recover.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

Reversed and remanded.

*H. T. Harrison pro se.*

Estoppel should have been pleaded in the answer, and as it was not and there was no proof of an estop-

pel the court should have excluded the evidence offered by defendants under the answer. Blodgett v. Perry, 97 Mo. 272. John Grubb, witness for defendant, states that there was no consultation with plaintiff's grantor about the deeds, they simply told her what they had done and came over to give her the personal property. There was no estoppel. Gentry v. Gentry, 122 Mo. 220; Wurmser v. Frederick, 62 Mo. App. 638; Bramell v. Adams, 146 Mo. 82; Bartlett v. Kander, 97 Mo. 361. Estoppel is not pleaded which is absolutely necessary when relied upon *in pais* as a defense. Throckmorton v. Pence, 121 Mo. 59.

*McReynolds & Halliburton* for respondents.

(1)  Joel Grubb and Rhoda C. Grubb were tenants in common of the land in controversy. McReynolds v. Grubb, 150 Mo. 352. (2)  A married woman after becoming discovert may affirm an executory contract made during coverture, and it will be mutual and binding, and she may affirm and ratify a deed. Price v. Hart, 25 Mo. 171; Boatman v. Curry, 25 Mo. 433; Walker v. Owen, 79 Mo. 571. (3)  Rhoda C. Grubb having received from her husband the agreed consideration for her interest in this land; and having ratified the deed as intended to have been made, and settling with the heirs, and having stood by and seen America McReynolds and Sarah A. Montague buy and pay V. H. Grubb for his interest therein, take possession of same, divide it, and make lasting and valuable improvements thereon, and pay the taxes for years, would be estopped from now claiming this land or any part of it, and plaintiff, having taken his title with full knowledge of all the facts, is estopped from claiming it. Ins. Co. v. Rosenheim, 56 Mo. App. 36; Highley v. Barron, 49 Mo. 103; Sweeney v. Mallory, 62 Mo. 485; Austin v. Loring, 63 Mo. 19; Green v. Railroad, 82 Mo. 653; St. Louis v. Davison, 102 Mo. 149; Combs v. Sullivan Co.,

105 Mo. 230; Clyburn v. McLaughlin, 106 Mo. 521; Mc-Reynolds v. Grubb, 150 Mo. 352. (4) Estoppel is fully and properly pleaded, containing same facts as in petition of McReynolds v. Grubb, 150 Mo. 352, which the court held would be good as an estoppel though not sufficient to support a decree in equity.

GANTT, P. J.—This is an action of ejectment for the south half of the northwest quarter of the southeast quarter of section 17, township 28, range 31, in Jasper county, Missouri.

The common source of title was admitted to be in Joel Grubb and Mrs. Rhoda C. Grubb, who were, in their lifetime, husband and wife. Mathew Payne, the father of Mrs. Rhoda C. Grubb, died seized of this and other lands, and after his death a partition was had. It was alleged in the petition for partition that Joel Grubb had by purchase acquired the interest of certain heirs in his own right, and that Mrs. Grubb had inherited a part of said land as a daughter and heir at law of Mathew Payne, deceased. The partition was in kind and the share of Joel Grubb and Mrs. Rhoda Grubb, his wife, was found by the court to be ''three and thirteen-fifteenths of seven and three-fifths of said land,'' quantity and quality considered, and their said shares were ordered to be set off to them by metes and bounds.

The commissioners set off to Joel Grubb and Rhoda C. Grubb the west half of the southeast quarter of section 17, in township 27, range 31, in Jasper county, Missouri. Joel Grubb died in October, 1889. Mrs. McReynolds is one of the children and heirs at law of Joel Grubb. Joel Grubb was married twice, if not three times. His first wife was Cyrena Payne, the mother of five of his children, to-wit, America McReynolds, Sarah A. Montague, John Grubb, Jacob Grubb and Virgil Houston Grubb. Rhoda C. Grubb bore him one child, Victoria Grubb, who also survived him and afterwards intermarried with Mr. Coulter.

From the statement of counsel it appears that Joel Grubb had a second wife who was the mother of two children, but that for some reason Joel Grubb disowned them.

In 1877 Joel Grubb was the owner in fee of the northwest quarter of the southwest quarter of section 10, township 27, range 31, except two and one-half acres thereof. It seems this was his homestead. He also owned twenty-six and one-half acres, a part of the northwest quarter of the southeast quarter of section 9, township 27, range 31. The plaintiff in this suit bases his right to recover on purchases and deeds from Mrs. Rhoda C. Grubb and her daughter, Mrs. Victoria Coulter, to the northwest quarter of the southeast quarter of section 17, township 27, range 31.

The deed from Rhoda C. Grubb was a quitclaim deed and dated May 28, 1896, consideration $500, and recorded in book 145, p. 246. Mrs. Coulter's deed was executed by her and her husband to plaintiff August 16, 1899, for the consideration of $80, and is recorded in book 145, p. 377. It was admitted that defendants McReynolds were in the possession of the south half of the northwest quarter of the southeast quarter of section 17, township 28, range 31, the land described in the petition.

The answer is a general denial, but admits defendants have been in possession of the land since the twenty-first day of October, 1899. The answer then at length and in detail proceeds to state all the real estate owned by Joel Grubb in 1877 in his own right, and his ownership with his wife of the northwest quarter of the southeast quarter of section 17, township 27, range 31, except three-fourths of an acre in the southwest corner; said Joel owning an undivided three-fourths thereof and his wife Rhoda owning one undivided one-fourth. The previous marriage of Joel Grubb and the fact that in 1877 there were living five children by his first wife as already stated. The substance of the re-

mainder of the answer will appear in the course of the opinion.

To this answer plaintiff filed a reply denying all the new matter alleged therein.

This controversy has been in this court on a former occasion in the cause of McReynolds v. Grubb, 150 Mo. 352. That was a suit in equity to correct the mistake made in the description of the land in suit in the deed from Joel Grubb and Rhoda C. Grubb to Jacob Grubb of date of March 9, 1877, whereby the northwest quarter of the southeast quarter of section 17 was described as the northeast quarter of the southeast quarter of said section 17, and it was then held that as the interest of the said Rhoda C. Grubb in said northwest quarter of the southeast quarter was inherited by her from her father, Mathew Payne, after her marriage to Joel C. Grubb and prior to the adoption of section 6864, Revised Statutes 1889, it was not her separate estate, and could only have been conveyed by her and her husband jointly, and then only by deed signed and acknowledged by them as provided by section 14, p. 935, Wagner's Statutes 1872, and as said deed did not describe the land intended to be conveyed as to Mrs. Grubb it conveyed neither the legal nor the equitable title, and a court of equity could not correct said deed. Thereupon the plaintiff who had acquired the interest of Mrs. Grubb and her daughter, Victoria Coulter, brought this action in ejectment.

I. The first proposition advanced by plaintiff on this appeal is that the decree in partition of the estate in this land of Mathew Payne, deceased, Joel Grubb and Rhoda C. Grubb became tenants by the entireties of the northwest quarter of the southeast quarter of section 17, township 27, range 31, except three-fourths of an acre in the southwest corner thereof. This is a misapprehension of the law and a misapplication of the doctrine of tenancy by the entireties.

Unquestionably at common law a conveyance to

husband and wife in fee vests the estate in them as one person, the whole of which remains to the survivor of them, and the statutes of this State have not altered or modified the common law in this respect, but have reaffirmed it. [Sec. 4600, R. S. 1899; Doe on demise Freestone v. Parratt, 5 Term Repts. 655; Gibson v. Zimmerman, 12 Mo. 386; Garner v. Jones, 52 Mo. 68; Edmondson v. Moberly, 98 Mo. 523; Hume v. Hopkins, 140 Mo. 72; Russell v. Russell, 122 Mo. 235.]

In all such cases the deed or will creates the title in the husband and wife, but in partition even if made by deeds *inter partes* no additional estate is conveyed to the partitioners. The decree of partition in the one case, or the voluntary deeds in partition in the other, only have the effect of assigning to each coparcener in severalty and by metes and bounds that which was already his or hers. Our statute expressly permits any number of shares to be set off together in one parcel. [Sec. 4387, R. S. 1899.] This is settled law in this State. It follows that Joel Grubb and his wife Rhoda were tenants in common and not by the entirety in said forty acres. [Whitsett v. Wamack, 159 Mo. 14; Palmer v. Alexander, 162 Mo. 127; Snyder v. Elliott, 171 Mo. 362; Propes v. Propes, 171 Mo. 407.]

It is then obvious that in no event could plaintiff recover more than the three-elevenths which Mrs. Rhoda C. Grubb inherited from her father, Mathew Payne, by virtue of his deed from her. Her dower rights in the eight-elevenths (or three-fourths as defendants say) of which her husband was seized, not having been asserted during the ten years after her husband's death, is barred by the statute of limitations.

II. Was Mrs. Grubb estopped to claim her three-elevenths or one-fourth of said forty acres? If she was, it is clear that plaintiff took with notice of the facts which are alleged to estop her, and he stands in the same relation to defendants as to her said interest in said land that Mrs. Grubb bore to them.

It is insisted that on former appeal this court held that Mrs. Grubb would be estopped to claim her interest in said land, but this is not a correct interpretation of our opinion in that case. All that was said on that subject by this court was that "*it may be* in an action of ejectment by defendant (Mrs. Rhoda Grubb) for the possession of the land, that by reason of the fact that she received from her husband the agreed consideration for her interest in the land, and having settled with the Grubb heirs upon that theory, and then having stood by and seen them making lasting and valuable improvements thereon, she would be estopped in ejectment from a recovery." Clearly this was *obiter,* as there was no plea of estoppel in that case, and the language used can not be fairly construed into a determination by us of that proposition. It was simply left open to be determined when, and if, an action of ejectment should be brought and the plea of estoppel interposed.

The answer pleads an estoppel *in pais,* and the evidence discloses that Joel Grubb and his wife Rhoda C. Grubb owned the forty acres of land in section 17, in 1877, as tenants in common, Joel being entitled to three-fourths or eight-elevenths and his wife three-elevenths or one-fourth, as the case may be; that Joel owned a homestead in the northwest quarter of the southwest quarter of section 10, township 27, range 31 in his own right, and 26 acres in section 9; that in March, 1877, Joel Grubb, being desirous of settling his affairs and providing for his family without the cost of administration or partition, proposed to his wife that they would convey all the land he owned and all the land that he and she jointly owned to his son, Jacob Grubb, and that Jacob should then convey to Joel's wife and child, Victoria, the homestead or northwest quarter of the southwest quarter of said section 10, and that Jacob should then hold the lands in sections 17 and 9 until the death of Joel, his father, when the said sixty-six

acres should be divided between Joel's five children by his first wife, and conveyances were accordingly drawn to carry out this agreement, and Jacob Grubb gave his father his note for $500 as a guaranty that he would make said conveyances when his father died. But in the drawing of the deed to the land now in suit a mistake was made in the description, whereby the deed contained the northeast instead of the northwest quarter of the southeast quarter of section 17. Joel Grubb did not then or ever afterwards own the northeast quarter of the southeast quarter. The intention of Joel Grubb to deed the northwest quarter of the southeast quarter is too clear to be questioned and he only failed to do so by the mistake of the scrivener. After his father's death in October, 1889, Jacob Grubb in good faith conveyed the sixty-six acres to his brothers and sisters, conveying this forty acres now in dispute to Mrs. McReynolds and Mrs. Montague and their brother Virgil Houston Grubb, and the twenty-six acres to John Grubb and Jacob. At this time none of the parties noticed the misdescription of the land in suit. Virgil H. Grubb then conveyed, in consideration of $150, his one-third in the forty acres in suit to his two sisters, Mrs. McReynolds and Mrs. Montague, who took possession at once of said forty acres and repaired a house on it. Afterwards, in 1891, Mrs. Montague and Mrs. McReynolds divided the forty acres equally, Mrs. McReynolds getting the south half and Mrs. Montague the north half thereof. Having satisfactorily adjusted the partition of the land among themselves, these five children went to the homestead of Mrs. Rhoda Grubb and informed her of their arrangement and requested her to deliver up the $500 note of Jacob Grubb held by their father, as the consideration had been satisfied. They also notified Mrs. Rhoda Grubb that she could have all the personal estate and that her note for $100 to her husband should be delivered to her to be cancelled, and she expressed herself as greatly pleased at the division

and that it had been accomplished without any unkind feeling.

Each child took possession of his own and matters so continued until 1895 when Mrs. Grubb commenced to make claims to the forty acres in suit, wherepuon Mrs. McReynolds and her husband and sister brought their suit in equity to correct the mistake in the deed, which was determined against them in McReynolds v. Grubb, 150 Mo. 352, in June, 1899.

Upon the foregoing facts the circuit court found for defendants, and plaintiff appeals.

The elements necessary to constitute an estoppel *in pais* were stated in Taylor v. Zepp, 14 Mo. 482, to be, "first, an admission inconsistent with the evidence proposed to be given, or the claim offered to be set up; second, action by the other party upon such admission; third, an injury to him by allowing the admission to be disproved."

But there are also other grounds of estoppel recognized by the courts. Thus, in Collins v. Rogers, 63 Mo. 515, and Evans v. Snyder, 64 Mo. 516, it was held that where the owner of land, knowing it to be his, stands by silently and sees the occupant making lasting improvements upon the property he will be estopped from claiming it. "Silence in some cases will estop a party, 'but silence without knowledge works no estoppel.'" [Acton v. Dooley, 74 Mo. l. c. 69.]

Applying these familiar principles to the facts pleaded and in evidence was Mrs. Grubb estopped from this land? In the former suit we held that a court of equity could not correct the mistake in the deed in which she joined her husband; that she was incompetent at the date of its execution by reason of her coverture to make a deed. But while this is true, defendants insist that after Joel Grubb's death Mrs. Grubb was a *femme sole* and joined in and assented to the division of the lands of their father and saw these defendants enter upon and take possession of this land in good

faith, believing that they had a good title thereto and made lasting and valuable improvements on it. Unquestionably after Mrs. Grubb became discovert, and a *femme sole,* she stood before the law just as any other person *sui juris,* and must be held to the same accountability. Did she know that her title to the three-elevenths or one-fourth (as the case may be), which her grantee now claims was hers, had not been affected by the deed of her husband and herself executed in 1877 to Jacob Grubb? We think the evidence shows that she did not. But if there is any doubt on this point, the allegation of the defendants' answer seems to establish she did not, because, they allege, "that neither defendants Rhoda C. Grubb or Victoria Grubb discovered the mistake in the description of said land in section 17 in the deed from Joel Grubb and Rhoda C. Grubb *until the year* 1896." For the purposes of this case this admission thus made of record must be held binding on defendants, and that when the division was made by the five children of the first marriage in October, 1899, Mrs. Grubb was not aware of her title to her one-fourth or three-elevenths of said forty acres here in dispute.

Did she do anything which misled the defendants to their hurt? John Grubb, one of the five children, over the objection of plaintiff was permitted to testify as to what his father told him as to the reasons for making the deed to Jacob in 1877, and that the first conversation he had with Mrs. Rhoda Grubb concerning this property was some two weeks after his father's death in October, 1889. He says:

"We didn't go there (to Mrs. Grubb's house) to make any division whatever. We had made the division of what we considered our own property *before that time;* on that same day, however, we had divided it mutually among ourselves. We went to turn over the personal property to her (Mrs. Grubb): *make her a gift of it.* We went over there to tell her and to have

an understanding as to the whole settlement, and I explained to her what *we had done* in the matter." "Told her we had divided the land among ourselves. I am not positive I told her how. I think maybe I did." "All the personal property was to be hers, and not to be disturbed in any way, shape or form or manner, and to turn it over to her to do as she pleased with it. We could not have taken it away if we had wanted to and she knew it." "About Jake's $500 note, I says to her, 'You know how this thing was all understood to be settled?' and she said, 'Yes, she understood that.' Says I, 'There is a $500 note here given by Jake as you know very well. There is two notes, one for $100, and you know none of these notes, according to the spirit of the contract, are ever to be paid or settled in any way. That note belongs to us and we would like to have it,' and she went and got it and handed it to me." "That note may have been given to Jacob, or I may have taken it home. It was never presented for collection." As to why this $500 note was given, "I only says, 'You understand that about this contract, you and him made for a division of all this property and why these notes were given both of them?' I didn't go into the whys and wherefores of this note." "At that time I held a chattel mortgage on my father's personal property." "It never was presented and never should have been; *it never was intended to be.*" "I told her we could take everything off of the place as she well knew, *but she didn't say whether she knew it or not.*" "I told her we could take it by virtue of a bill of sale; it wasn't exactly a chattel mortgage." Sometime after this he came by her house, quite a while afterwards. "She said she thought we ought to give Vic, her daughter, forty acres of land. She didn't claim it by any right of law or equity, just appealed to our generosity and gave her reasons. I told her, 'You have more than half the valuation of the whole estate.'" Asked what Mrs. Grubb said when they told her about how

they had divided the property he said, "She said, 'I am not only satisfied, but more than satisfied.' This forty acres in suit was rented that year and I had a sister that father told me owed $20 or $25 that was due her from grandfather's estate, and I said to my stepmother, 'There is some wheat down here that is rent wheat; that don't belong to us and America has never been paid her interest in her grandfather's estate, are you willing for us to take sufficient to pay that debt?' and she said she was."

On cross-examination he stated there was nothing said about deeds at the time they were at Mrs. Grubb's house, not a word, or making deeds. We met at Jake's house and divided up the lands without consulting the widow about it. She had nothing to say about that. Asked if on the other trial he had not testified, "She made more threats afterwards, two or three months, or three or four months afterwards; she told me we have just robbed her," he answered he did; "that was the time she entered complaint about Vic."

Mr. McReynolds testified substantially as John Grubb did as to the occurrence at Mrs. Grubb's house. He said no deeds were made there. It was Sunday. The deeds were made in Carthage next day. The trade between Virgil and his sisters was not talked of in the presence of Mrs. Rhoda Grubb. This agreement to divide the land was made before they went to her house. They went over and told her she could keep the personal property; there would be no need of an administration. He testified to some two hundred dollars worth of improvements he had placed on his wife's twenty acres and that Mrs. Grubb had talked with him about his improvements and had passed the place after he went there to live and saw his family there in 1891 and 1892.

H. Montague, the husband of Sarah A. Montague, one of the defendants, testified over the objection and

exception of plaintiff that he was at Joel Grubb's funeral; that Mrs. Grubb rode home from the funeral with him. She said Jake had a deed to the forty acres, and also the twenty-six acres. He was present on the Sunday that they went to her house and heard her say she was satisfied. John told her that they had decided to let her keep the forty acres her husband had conveyed to her, and all the personal property, and had divided the twenty-six acres and the other forty acres between the five children; that John then asked for Jake's $500 note and she got it and gave it to him. As to the amount of personal property, he said there were several head of horses and a number of cows and quite a lot of hogs and pigs, but how many he couldn't state. Two wagons, one pretty old one and one not very old.

Jake said there was a $100 note of his that had some credits on it. She said she was satisfied as to the personal property. He knew she was claiming the forty acres in 1896 before he brought the other suit against her.

Mrs. McReynolds testified they met at Jake's house and agreed upon a division of the land before they went to Mrs. Grubb's home, and corroborated John's statement as to what occurred there that Sunday. They gave Mrs. Grubb all the personal property, some $200 or $300 worth. She asked what part we girls had taken and we told her that sister and I and Virgil took the spring forty and John and Jake the twenty-six acres. She said she wished we girls had taken the twenty-six acres as she and Jake were not on very good terms. She said she was glad we settled without any trouble.

Mrs. Montague and Jacob Grubb testified substantially as their sister did.

On the part of plaintiff there was the evidence of Mrs. Grubb taken in the former trial (she having died before this cause was tried) to the effect that she purchased the homestead forty acres in section 10 from

her husband Joel Grubb in his lifetime at and for the price of $350; that she and her sons paid for it by selling $110 worth of her property that she had when she married him and by allowing him to keep certain moneys which he held as guardian for her minor children by her former husband, Mr. Crow, and after estimating what he had received, there was a balance of $100, and he agreed that upon the payment of this $100 by her he would convey to her the homestead forty acres, and thereupon she gave him her note for that sum with J. W. Crow, her oldest son, as surety.

Abe Crow testified that he paid $25 on the said note and that it was paid.

From the foregoing summary of the evidence it seems clear that defendants were not induced to make the division of the lands in suit by anything said or done by Mrs. Grubb. All of the children except Virgil Grubb testified and they all concur in saying that they met at Jacob's house, and agreed among themselves as to the division, in the absence of Mrs. Grubb; they then went to her house, notified her that they had made the division and had come to tell her she could keep the personal property, amounting to some $200 or $300, the weight of the evidence being that it did not amount to over $250; that they demanded Jacob's $500 note and she gave it up to them. They all say she was in no way consulted as to the division of the land nor did she make any statement whatever as to the title. It seems too clear for discussion that they did not rely upon anything she said in making their division, and Victoria Grubb at that time was a child and ignorant of what was going on and incapable by her infancy of estopping herself any way.

The permission given her to keep the personal property has none of the elements of an estoppel. It is not pretended that it was the result of a contract. They testify they intended it *as a gift*, assuming that they could claim it by virtue of the bill of sale which

John Grubb admits had no validity and was never intended to have any. They parted with nothing in allowing her to keep the personal property. She was entitled to it as the widow of Joel Grubb by the laws of this State to the amount of $400 in addition to her household and kitchen furniture. These children were assuming a virtue which they had not.

No one can read this evidence without being impressed with the fact that the children of Joel Grubb were taking matters in their own hands and administering his estate without consulting his widow, and her acquiescence under the circumstances in their very *generous* offer to permit her to keep that which was her own, can not be construed into an estoppel of any rights she had in the land of her deceased husband. It is lacking in the elements which this court required to exist in estoppels in Blodgett v. Perry, 97 Mo. l. c. 273, wherein it approved Bigelow's statement of equitable estoppel; viz., that, "The cases when carefully analyzed show that all of the following elements must actually or presumably be present in order to an *estoppel by conduct*: 1. There must have been a false representation or a concealment of material facts; 2. the representation must have been made with a *knowledge* of the facts; 3. the party to whom it was made must have been ignorant of the truth of the matter; 4. it must have been made with the intention that the other party should act upon it; 5. the other party must have been induced to act upon it." [Bigelow on Estoppel (3 Ed.), 484.] So that the case upon the facts is reduced to the one consideration, Is she estopped by her silence and laches?

As said by this court in Acton v. Dooley, 74 Mo. 69, "Silence in some cases will estop a party, 'but silence without knowledge works no estoppel' [31 Pa. St. 334.] 'If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contra-

dicting them, even though they would be conclusive against his right if not contradicted.' 'There is a wide difference between silence and encouragement.' 'But there is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts which if known would have made it his duty to speak or act.' ''

In Monks v. Belden, 80 Mo. 642, this court in quoting Taylor v. Zepp, 14 Mo. 482 and Acton v. Dooley, 74 Mo. 63, said: ''An admission or assertion made by one party to another is not sufficient to create an estoppel *in pais*, unless the party to whom it was made *acted upon* it.''

In Blodgett v. Perry, 97 Mo. 273, this court, approving Acton v. Dooley, 74 Mo. 63, said: ''Furthermore, there must be a *certainty* about the alleged estoppel; the misrepresentation must be plain, not doubtful or matter of mere inference or opinion; for the courts will not suffer a man to be deprived of his property or security where he has no intention to part with it. It is much the same thing to say that the representation or conduct is such as would naturally lead to the action taken; that is, it should be such as to justify a prudent man to act upon it.''

Mrs. Grubb's title to the undivided one-fourth in the northwest of the southeast quarter was of record and directly in the chain of title of defendants from their father. By the slightest diligence they could have ascertained if Mrs. Grubb had conveyed her interest. The search to that extent would have disclosed the mistake which they claim was made and before dividing the land they could have ascertained her rights. We have already ruled that neither a court of law nor equity could correct such alleged mistakes because Mrs. Grubb was at that time a married woman and her estate a legal one and not her separate estate.

In view of these established principles it is obvious that when the five children and the two sons-in-law of

Joel Grubb went to the home of Mrs. Grubb after their father's death, they did not seek any information of Mrs. Grubb as to this land; they did not inquire of her in any manner about the land, and she made no statement which induced either of them to believe she had parted already with her title or to dissuade them from examining the record. They had already made that division before they came and their mission was merely to advise her that she could keep the personal property and that they had divided the land. The evidence tends strongly to show she was a woman of very limited education. She could only read and write a little. In addition to defendants' solemn admission in the answer that she did not know of the error in the description of the land, her own testimony was that she did not understand she was conveying her interest when she joined in the deed to Jacob, but was merely confirming the title to the Wardin forty acres, which her husband had sold to Wardin. In Bales v. Perry, 51 Mo. 449, it was said: "Though silence in some cases will estop a party from speaking afterwards, yet 'it is only when it becomes a fraud that it postpones.' If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel." In that case, Bales, the mortgagor, was present at the sale of his property, but he made no statement or did anything to mislead anyone to purchase. The mortgage was of record and the sale was not made by the mortgagee, but a third person whom the mortagee without authority deputed made the sale. He brought suit to redeem and it was held he was not estopped merely because he remained silent when his property was being illegally sold. We think the silence or failure of Mrs. Grubb to make claim to her one-fourth interest in this forty under the peculiar circumstances and her ignorance of her right did not mislead the children of her husband.

As to the question of laches. As already said, she was a woman of little or no education. This division

was made in October, 1889. She began soon thereafter to ask John Grubb to make some provision for her young daughter. Told them the children ought to do it. When he refused, she consulted Mr. Houghawout, an attorney, and paid him to get her an abstract, but he did not do so and from time to time she called on him, but he was not in his office and then the suit to correct the deed had been begun by the defendants against her and she consulted Mr. Gray and he said wait until that suit was ended. In this way she was delayed two or three years. It does appear, however, that as early as 1895 she had made a claim to the property in section 17, and that the defendants knew of her claim and for that reason began suit against her. In the meantime defendants had spent some two hundred dollars in fixing up an old house and adding a room to it and placed some small barns or stables on it. Considering her ignorance of the condition of her title and her efforts to ascertain through attorneys what her rights were and the delays occasioned thereby, we do not think it can be equitably held that she lost her title on account of her laches. What would be gross laches in one case would be none or very slight in another. In Spurlock v. Sprotle, 72 Mo. 503, a delay in bringing a suit to redeem for a period of five years and more was held not to bar a right to recovery, and the court commented on the fact that the purchaser had received all the rents and profits and there were no improvements to amount to anything. In this case the defendants have had all the rents and profits and the improvements were of small value, and made as they were in evident good faith, defendants can have their value assessed and paid for before plaintiff can recover. We think there was no laches in not bringing ejectment pending the suit in equity to correct the deed, and in view of all the circumstances, that her delay in bringing her ejectment by itself ought not to bar her right of recovery, or plaintiff as her vendee with notice.

As to the one-sixth interest of Victoria Grubb or Mrs. Coulter, we think the defendants were clearly entitled to have the deed to Jacob Grubb corrected. We have no doubt whatever that Joel Grubb intended to convey the northwest of the southeast quarter of section 17 to Jacob Grubb, and that in equity he did so, and plaintiff acquired no title as to the said sixth interest, if indeed there is anything which would justify this court in saying she would have had more than one-eighth interest therein if he, her father, had never conveyed it or attempted to convey it.

Our conclusion is that plaintiff is entitled to recover, on the facts shown, one-fourth of the twenty acres in suit, subject to the right of defendants to have the value of any permanent improvements they have put on said land first ascertained and one-fourth thereof paid by plaintiff before he is entitled to possession and that the court erred in not so holding.

The judgment is reversed and the cause remanded. All concur.