DUFFEY *et al.*, *Plaintiffs in Error*, v. WILLIS.

1. **Homestead:** ABANDONMENT. When a homestead has been acquired, the question of abandonment is one of fact, and each case must, in a great measure, rest upon its own particular facts. The right of a homestead exemption ceases to exist when the occupant leaves the premises with a view of acquiring a residence elsewhere, and with no intention to return. The intention to return must be formed at the time of the removal from the premises in order to preserve and continue the homestead exemption.

2. ———; ———: EVIDENCE. The evidence in this case reviewed and *held* to support the finding of the lower court that defendant had not abandoned his homestead.

*Error to Carroll Circuit Court.*—HON. JAMES M. DAVIS
Judge.

AFFIRMED.

*Crawley & Son* for plaintiffs in error.

The evidence discloses a clear case of abandonment of the homestead. (*a*) The case is squarely within the decision of the Missouri supreme court, in *Smith v. Bunn*, 75 Mo. 560, and the other leading cases on the subject. *Davis v. Andrews*, 30 Vt. 679; *Matter of Pheland's Estate*, 16 Wis. 80; *Jarvis v. Moe*, 38 Wis. 440. (*b*) The fact of removal, of itself, raises a presumption of abandonment, to rebut which, the burden is upon the claimant to show a specific purpose for leaving, which purpose must have been consistent with a merely temporary absence, and be coupled with a fixed intention to return. *Harper v. Forbes*, 15 Cal. 202; *Benson v. Aitken*, 17 Cal. 164; *Jarvis v. Moe*, 38 Wis. 448; *Smith v. Bunn*, 75 Mo. 560; Thompson on Homesteads, sec. 284. (*c*) Defendant's declaration, after his property had been levied upon and sold, that he "never intended to abandon his homestead," should be rejected in view of

his actions, his admissions in the agreed statement of facts, and inconsistent declarations in the same affidavit. Thompson on Homesteads, sec. 270; *Vasey v. Trustees*, 59 Ill. 188.

*James H. Wright* for defendant in error.

(1) Abandonment is a question of fact. Thompson on Homesteads, sec. 265. (2) "An abandonment of the homestead is accomplished, not by going away without intention of returning at any particular time, but by going away with the definite intention of not returning at all." *Foreman v. Meroney*, 18 Rep. 409; *Porter v. Clarke*, 18 Rep. 425. See also all of section 287 of Thompson on Homesteads. (3) The general doctrine on this subject is that the old homestead right remains until a new homestead is acquired. In none of the states do they hold that mere temporary absence will work a forfeiture of the homestead right. *Wetz v. Beard*, 12 Ohio St. 431; *Chipperly v. Rhoades*, 53 Ill. 346; *Potts v. Davenport*, 79 Ill. 455; 1 Washburn on Real Property, p. 420, *et seq.* (4) It now seems well settled that where premises have once been occupied by the claimant and his family, so as to impress them with the homestead character, the homestead right will be maintained, unless the intention to abandon them permanently is clear and indubitable. *Cross v. Evarts*, 28 Tex. 533; *Wiggins v. Chance*, 54 Ill. 175; *Chipperly v. Rhoades*, 53 Ill. 346; *Potts v. Davenport*, 79 Ill. 455.

BLACK, J.—The question here is whether the defendant lost, by abandonment, his right to have a house and lot in Carrollton, Carroll county, set off as a homestead.

The plaintiffs recovered a judgment against defendant for $228.80, in March, 1885, for goods sold in that year. Execution was issued in November, 1885, and levied upon the house and lot. The appraisers appointed

by the sheriff valued the property at seven hundred dollars, and set the same off as a homestead. Plaintiffs moved to set aside the appraisers' report. This motion was submitted to the court on agreed facts, but, before the court ruled upon it, the sheriff sold the property, and thereupon defendant filed motion to set aside the sale. This motion was supported and opposed by affidavits which were read as evidence without objection. The court sustained the motion to set aside the sale and overruled the one filed by plaintiffs.

The defendant owned, and, with his family, resided in the property at and prior to the spring of 1882. At that time, he moved to Springfield, in another county in this state, and remained there from six to twelve months. He then returned to Carroll county, and began a mercantile business in a small way at a place called Clione. From there, he moved his goods and family to Hale, a small village in the same locality. In May, 1885, which was after the date of the judgment, and before the execution was issued thereon, he closed out his business and moved back to the property in question at Carrollton. The agreed facts filed with the first motion state that it was his intention, when he went to Hale, "to live and do business there indefinitely." In his affidavit filed in support of the second motion, defendant says:—"I returned from the Southwest in a few months without having made any effort to get a home there, or without trying to purchase any property. I did business during the years 1883 and 1884 in Clione and Hale, in this county, about eighteen months, but I have never owned or claimed any homestead except my home in Carrollton. I went into business in Clione and Hale because I thought I could make some money there, and thus better my condition. I moved back to Carrollton into this property some time in May, 1885, and have occupied it with my family ever since. I have never at any time, since the purchase of said

property, had the least intention of abandoning it as a homestead. If I had been successful in business and had had a good chance to sell said property, I might have sold it and invested the proceeds in another home."

The property was rented out from 1882, to May, 1885. The defendant's agent says it was. rented from month to month only; that in July, 1884, and before the date of plaintiffs' judgment he terminated the lease and got possession of the property, because defendant wanted to move back at that date. The agent goes on to say : "Mr. Willis never gave up the property as his home, but, from what he said and wrote to me, he always intended to move back to it."

In *Smith v. Bunn*, 75 Mo. 559, Isaac Smith lived on the premises until the death of his first wife, when he broke up housekeeping, moved his household goods, and leased the premises for three or five years. He then married, and within a few weeks died, having made some preparations to move back to the premises. His widow claimed the property as her homestead, but it was held these facts made out a *prima facie* case of abandonment.

In *Kaes v. Gross*, 92 Mo. 648, the plaintiff and her first husband had acquired a homestead, he died, and she married again and moved to the home of her second husband in another county, and had resided at her last home for nearly four years. It was held she had abandoned her former homestead.

The present case, it will be readily seen, differs from those just cited in this, that there is here evidence of an intention to return on the part of defendant. It was also worthy of note that the defendant acquired no new home upon which the homestead right could attach. This case is more like that of *Potts v. Davenport*, 79 Ill. 456, where the homestead claimant rented his farm for one year, reserving two rooms, and moved to Chicago, expressing an intention to return, if the climate and

other matters suited him.   He remained there for three years, and then returned, and it was held the evidence supported his continued homestead right to the farm.

The cases before cited from this court assert or rec-·ognize these principles, that when a homestead has been acquired, the question of abandonment is one of fact, and each case must, in a great measure, rest upon its own particular facts; that the right of a homestead exemption ceases to exist when the occupant leaves the premises with a view of acquiring a residence elsewhere, and with no intention to return; and that the intention to return must be formed at the time of the removal from the premises, in order to preserve and continue the homestead exemption.

The defendant's residence at Springfield is without any great significance; but his residence at Clione and Hale, and doing business at those places, make a *prima facie* case of abandonment of the Carrollton homestead. On the other hand, it appears the Carrollton property was rented from month to month only.   It was vacated by the tenant in July, 1884, the defendant then intend-ing to move back, but his business prevented him from so doing.   The evidence of the agent tends to show that defendant never gave up his Carrollton home, and that his residence elsewhere was temporary.   The letters to the agent, and a detailed statement of the conversations, would be more satisfactory evidence, but we must take the case as we find it.   Taking the agreed statement, and the evidence as a whole, we are of the opinion the trial court did not err in holding that the defendant had not, at any time, abandoned his Carrollton homestead. At all events, the finding of the circuit court is not against the evidence, but is supported by it.

The judgment is therefore affirmed.   RAY, C. J., and BARCLAY, J., absent, the other judges concur.