Hart v. Leete.

---

HART, *Appellant,* v. LEETE *et al., Appellants.*

DIVISION ONE.

1. **Married Woman :** SEPARATE ESTATE. While no particular or technical words are necessary to create a separate estate in a wife, yet the intent to exclude the husband's common-law rights must clearly appear.

| | |
|---|---|
| 104 | 315 |
| 107 | 431 |
| 104 | 315 |
| 108 | 341 |
| 108 | 409 |
| 104 | 315 |
| 115 | 197 |
| 116 | 176 |
| 104 | 315 |
| 56a | 509 |
| 104 | 315 |
| 123 | 462 |
| 104 | 315 |
| 128 | 89 |
| 104 | 315 |
| 131 | 288 |
| 63a | 27 |
| 104 | 315 |
| 135 | 439 |
| 68a | 402 |
| 70a | 612 |
| 104 | 315 |
| 141 | 580 |
| 104 | 315 |
| 171 | 14689 |

Hart v. Leete.

2. ——— : ———. A devise of land by a testator to his two daughters "in their own rights" does not create a separate estate.

3. ——— : GIFT OF STOCK OR BONDS : STATUTE. The provision of General Statutes of 1865, chapter 115, section 19, that "any property consisting of stocks and bonds of any kind given by a parent to a daughter shall with the proceeds thereof belong to such daughter, if married, in her own right and shall not be subject to the payment of the debts of her husband and may be disposed of by such married daughter the same as if unmarried," applies only where there is a specific gift of the stocks or bonds as such.

4. ——— : ——— : ———. Where a testator bequeaths to his daughter one-fifth of his estate and large sums are paid by the executors in distribution to her husband, the fact that such money is derived from dividends and interest on stocks and bonds will not, under said statute, deprive the husband of his marital rights therein.

5. ——— : PERSONAL PROPERTY : HUSBAND'S RIGHTS AT COMMON LAW : EQUITY. While by the common law marriage vested in the husband absolutely all her articles of personal property then owned or thereafter acquired by the wife, yet in equity the husband could waive his right thereto and permit her to retain the same free from any claim on his part.

6. ——— : CHOSE IN ACTION. A wife's chose in action did not vest in the husband by virtue of the marriage alone, but it was necessary for him to reduce it to possession to become the owner.

7. ——— : ——— : LEGACY. A legacy or distributive share coming from the estate of a decedent is a chose in action.

8. ——— : HUSBAND RECEIVING WIFE'S MONEY. Where the husband collects the money due upon his wife's chose in action, not as agent or trustee, but for the purpose of devoting it to his own use, there can be no doubt but this constitutes a reduction to his possession and the money then becomes his own and liable for his debts.

9. Married Woman's Act: PROPERTY PREVIOUSLY REDUCED TO HUSBAND'S POSSESSION. The act of March 25, 1875 (R. S. 1879, sec. 3296), did not attempt to reinvest the wife with title to property which the husband had reduced to possession, nor was it in the power of the legislature to deprive him of property which had become his own.

10. ——— : EXISTING MARRIAGES. Said act of March 25, 1875, secures to the wife her personal property and rights in action and applies to all cases where the husband had not, at the date of said act, possessed himself of his wife's personal property, no matter when the marriage took place.

Hart v. Leete.

11. ———: VESTED RIGHT: CONSTITUTION. The right of the husband to his wife's personal property and to reduce her choses in action to his possession is not a vested right and said act of March 25, 1875, is constitutional in its application to marriages existing at its date.

12. ———: " WRITTEN ASSENT " OF WIFE.  Under said act of 1875 the husband cannot acquire any interest in the wife's property, except on her assent in writing as provided in said statute and her money received by him after the going into operation of said act will be deemed to be held in trust for her in the absence of such assent in writing on her part.

13. Homestead: HUSBAND AND WIFE.  Where the husband is the head of the family and both he and his wife have an interest in the same tract of land, each interest exceeding in value the homestead exemption and the husband is the debtor, the homestead exemption will be allowed him out of his interest.

14. ———: FRAUDULENT CONVEYANCE.  Creditors cannot complain of the conveyance of a homestead having been made in fraud of their rights.

15. Married Woman: SETTLEMENT.  Where a wife's funds have become fully vested in the husband, a court will not divest them to make a settlement for her support.

16. ———: DEBTS DUE HER : FRAUDULENT CONVEYANCE.  A debt due a wife from a husband stands on the same footing as debts due any other person and he may even give her a preference over the latter, but he cannot convey his property to her in fraud of his creditors.

*Appeal from St. Louis City Circuit Court.*—HON. J. A. SEDDON, Judge.

AFFIRMED.

*Boyle, Adams & McKeighan* and *John D. Davis* for plaintiff, appellant.

(1) The will of James Harrison, deceased, did not create a separate estate in his unmarried daughter, Cordelia Harrison, now Cordelia H. Leete. *Garner v. Jones*, 52 Mo. 68; *Paul v. Leavitt*, 53 Mo. 595; *Morrison v. Thistle*, 67 Mo. 596; *Bank v. Taylor*, 53 Mo. 450–455; 2 Rapalje & Lawrence's Law Dictionary, p.

1132. ( 2 ) Section 19, chapter 115, General Statutes of 1865, did not make the greater part or any part of the money coming to Mrs. Leete, under the will of her father, her separate estate, or exempt from the debts of her husband. *Collier Will Case*, 40 Mo. 287 ; G. S. 1865, sec. 14, chap. 115 ; *Peck v. Walton*, 26 Vt. 86 ; *Clark v. Bank*, 47 Mo. 1. ( 3 ) The rights of Mrs. Leete, under her father's will, to one-fifth of the entire estate, was a chose in action within the meaning of the law, and as such entitled Dr. Leete *jure mariti* to take possession thereof, and appropriate the same for his own use and behoof. *Collier Will Case*, 40 Mo. 287 ; *Leakey v. Maupin*, 10 Mo. 368 ; *Watervelt v. Gregg*, 12 N. Y. 202 ; 2 Kent's Com. [ 12 Ed. ] p. 135. ( 4 ) The money invested by Dr. Leete in the premises in controversy, having been secured to him by the exercise of his marital right to reduce his wife's legacy to possession, became and was Dr. Leete's own money ; therefore, no resulting trust arose in Mrs. Leete to the premises in controversy, purchased and improved with such money. *Rogers v. Rogers*, 87 Mo. 259 ; *Modrell v. Riddell*, 82 Mo. 31 ; *Terry v. Wilson*, 63 Mo. 499 ; *Whitmore v. Learned*, 70 Me. 276 ; *Hyden v. Hyden*, 6 Bax. 407 ; *Boyd v. McLean*, 1 John Ch. 590 ; *Burns v. Bangert*, 16 Mo. App. 26. ( 5 ) As payment of the purchase money was not made by Mrs. Leete, when the title was taken, and as no obligation to pay was incurred by her at the time of the purchase, no subsequent payment, however clearly proved, would create any resulting trust in her favor to the premises in controversy. A resulting trust must arise, if at all, at the time the legal title is taken. Perry on Trusts, sec. 133 ; *Bottsford v. Burr*, 2 John. Ch. 408 ; 2 Pomeroy's Eq. Jur., sec. 1037 ; *White v. Carpenter*, 2 Paige, 217 ; 51 Am. Dec. 755, note. ( 6 ) There was no agreement between Mr. Leete and Mrs. Leete that the title to the premises in controversy should be taken in her name. There was, therefore, no trust created in favor of Mrs. Leete,

when Dr. Leete took the title in his own name. *Kidwell v. Kirkpatrick*, 70 Mo. 214; *Ream v. Karnes*, 90 Ind. 171; *Wiley v. Basil*, 4 Md. Ch. 327. (7) Augustus B. Hart having without any notice of Mrs. Leete's alleged rights loaned a large sum of money on the faith of Dr. Leete's apparent ownership of the property in controversy, his right, or the right of a purchase under his judgment, should be enforced in preference to the wife's claim to a resulting trust in the property so apparently owned by Dr. Leete. *Zimmer v. Dansby*, 56 Ga. 79; *Brooks v. Shelby*, 54 Miss. 353; *McCoy v. Hyatt*, 80 Mo. 130. (8) The deed of December 9, 1884, cannot be upheld under the equitable doctrine of "equity to a settlement." 3 Pomeroy's Eq. Jur., secs. 1114, 1115, 1116; *Dold's Adm'r v. Geiger's Adm'r*, 2 Gratt. 98–110; 1 White & Tudor's L. C. in Eq. 674, and cases cited. (9) The deed of December 9, 1884, was not intended to be in consideration of any debt due by Dr. Leete to his wife, and cannot be upheld on any such theory. *First*. Such theory is not pleaded. *Second*. If it were, it is not true in fact. *Third*. There was no mistake of law or fact, and none claimed by the parties. *Fourth*. The rule permitting explanation of consideration has no application to this case. *Fifth*. There is no *data* for reforming the contract, no evidence on which to do it. *State v. Frank*, 51 Mo. 98; *Modrell v. Riddell*, 82 Mo. 31; *Brohammer v. Hoss*, 17 Mo. App. 1. *Sixth*. There was no issue at the trial concerning the existence of any debt to Mrs. Leete, and, if there was, it was not proved. (10) The married woman's act of March 25, 1875, is not retrospective, and cannot be held to exempt any money or property secured by Dr. Leete prior to its passage, in the exercise of his marital rights, from the payment of his own debts. *Richardson v. Lowry*, 67 Mo. 411; *Hitz v. Bank*, 111 U. S. 722; *Roberts v. Walker*, 82 Mo. 208; *Moses v. Dock Co.*, 84 Mo. 242; *Terry v. Wilson*, 63 Mo. 493. (11) The existence of a homestead right in Dr. Leete

to $3,000 worth of the property in controversy does not screen the balance of the property, in the neighborhood of $30,000, from the just demands of Dr. Leete's creditors. *Crisp v. Crisp*, 86 Mo. 630; *Bunn v. Lindsay*, 95 Mo. 250; *Thompson v. Newberry*, 93 Mo. 18. (12) If Mrs. Leete has thirty-seven-hundredths of the premises in controversy, as found by the court below, the homestead right is left to the family, and should not be taken out of the sixty-three-hundredths of the property decreed to belong to the plaintiff. The husband and wife, both, are not entitled to the homestead. *Willis v. Matthews*, 46 Texas, 478–484; *Tourville v. Pierson*, 39 Ill. 447; *Gambette v. Brock*, 41 Cal. 78; Thompson on Homesteads, secs. 220–226. (13) As the circuit court never found that there was a valuable consideration for the deed to Mrs. Leete's trustee, and as the circuit court never found that there was a mutual mistake in respect to the consideration recited in the deed of December 9, 1884, and as such were not the facts, and were not supported by any evidence in the case, we do not argue, except incidentally in discussing the testimony, defendant's point 8, or subdivision 5 of their point 1. (14) There was no error in the refusal of the defendant's application to file an amended answer at the time, and under the circumstances attending the application. *Shields v. Powell*, 29 Mo. 315; *Gott v. Powell*, 41 Mo. 416; *Jones v. Hart*, 60 Mo. 364; *Vogler v. Montgomery*, 54 Mo. 577. (15) On the theory that Mrs. Leete has any interest in the premises in controversy, the referee adopted the correct method of apportioning the respective interests of Dr. and Mrs. Leete thereto. *Bowen v. McKean*, 82 Mo. 594; *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514. (16) Dr. Leete's right to reduce his wife's choses in action to possession and have and enjoy them and their proceeds as his own property was conferred upon him by the marriage contract between himself and wife in 1871. This right was not impaired or affected by the married

Hart v. Leete.

woman's act of 1875. Accordingly, it is immaterial whether he exercised the right before or after the passage of the act. *First.* Concerning the character of the marriage contract. Reeves' Domestic Relations [4 Ed.] p. 251; *State to use v. Fry*, 4 Mo. 182. *Second.* What constitutes retrospective legislation or impairment of the obligation of the contract within the meaning of the constitutional prohibition? *State ex rel. v. Hayes*, 52 Mo. 578; *State ex rel. v. Grant*, 79 Mo. 113; *Green v. Biddle*, 8 Wheat. 84; Sedgwick on Construction of Stat. and Const. Law [2 Ed.] p. 160; *Ins. Co. v. Flynn*, 38 Mo. 484; *St. Louis v. Clemens*, 52 Mo. 144. *Third.* The right of the husband to reduce the choses in action of the wife to possession and have the fruits thereof as his absolute property was a recognized and valuable right at common law; also an assignable right and one which could be reached by the husband's creditors. *Abington v. Travis*, 15 Mo. 243; *Wood v. Simmons*, 20 Mo. 363-380; *Croft v. Bolton*, 31 Mo. 360; *Hockaday v. Sallee*, 26 Mo. 220; *Schuyler v. Hoyle*, 5 Johns. Ch. R. 196; Reeves' Domestic Relations [4 Ed.] p. 5, note. *Fourth.* The act of March 25, 1875, does not by its terms necessarily relate to the husband's rights in choses in action acquired by a wife before its passage. *Fifth.* If it was so intended to relate to such rights it is unconstitutional and void because it impairs the obligation of the contract, and is retrospective in its operation. *Dartmouth College Case*, 4 Wheat., p. 518; Wells on Separate Property of Married Women, pp. 93-95; *O'Connor v. Harris*, 81 N. C. 284-5; *Sherry v. Niles*, 57 Ga. 512; *Dunn v. Sergeant*, 101 Mass. 336; *Jackson v. Sublette*, 10 B. Mon. 467; *Ryder v. Hulse*, 24 N. Y. 372. *Sixth.* It is not necessary that the right, in order to be protected from invasion by the constitutional safeguards, should be either a right or an estate in property; a right to secure the property is equally

protected by the constitution. *Warner v. Veitch,* 2 Mo. App. 463; *Gunn v. Barry,* 15 Wall. 610; *Phillips v. Schall,* 21 Mo. App. 44; *State ex rel. v. Greer,* 78 Mo. 193.

*Edmund T. Allen, N. Oscar Gray* and *C. B. Allen* for defendants, appellants.

(1) Mrs. Leete, having the legal title to the property in her trustee, and having been at the date of the deed a creditor of her husband for more than the value of the property, her trustee can hold that title against any other creditor. *First.* She was such a creditor as to all money collected by her husband from Edwin Harrison after March 25, 1875, and lost by him in loans to, or indorsements for, the Harrison Wire Company. *Broughton v. Brand,* 94 Mo. 169; *Gilliland v. Gilliland,* 96 Mo. 522; *Cooper v. Slandley,* 40 Mo. App. 138; *Harrison v. Smith,* 83 Mo. 210. *Second.* Dr. Leete's right to have preferred his wife as a creditor, and her right to have accepted the preference, cannot be questioned. Mere equitable obligations of like character have been held to be valid considerations for deeds. Bump on Fraudulent Conveyances, 316; Bump on Fraudulent Conveyances, 219; *Cole v. Shea,* 45 N. J. Eq. 786; *Kennedy v. Powell,* 34 Kan. 22; *Savage v. O'Neal,* 44 N. Y. 298; *Rudershausen v. Atwood,* 19 Bradwell, 58; *Crouse v. Morse,* 49 Iowa, 382; *Sims v. Moore,* 74 Iowa, 497. *Third.* Where equities are equal legal priority will prevail. *Thorndike v. Hunt,* 3 DeGex. & Jones 563; *Case v. James,* 29 Beav. 512; *Davidson v. Cowan,* 1 Dev. Eq. 470; *Muse v. Letterman,* 13 S. & R. 167; *Baird v. Williams,* 19 Pick. 381; *Ellis v. Kreutzinger,* 27 Mo. 311; *Ensworth v. King,* 50 Mo. 477; *Davis v. Ownsby,* 14 Mo. 170; *Martin v. Nixon,* 92 Mo. 26; *Black v. Long,* 60 Mo. 181; *Parks v. Bank,* 97 Mo. 130. *Fourth.* That Mrs. Leete did not formally release her husband from any part of this indebtedness, as consideration for the deed, is immaterial. *Williams*

*v. Robbins*, 15 Gray, 590; *Chamberlain v. Dorrance*, 69 Ala. 40; *Dudley v. Dudley*, 45 N. W. Rep. (Wis.) 602. *Fifth.* If there was a mutual mistake, as the circuit judge says there appears to have been, by Dr. Leete and his wife, in respect of the consideration recited in the deed, that fact disposes of the averment of fraudulent intent under the circumstances of this case. The parties to the deed are not estopped by such recital. *Bean v. Patterson*, 122 U. S. 496; *Hitz v. Bank*, 111 U. S. 722; *Featherstone v. Dagnall*, 29 S. C. 45; *Coles v. Soulsby*, 21 Cal. 47; *Dudley v. Dudley*, 45 N. W. Rep. (Wis.) 602; *Minor v. Sheehan*, 30 Minn. 419; *Wolford v. Farnham*, 46 N. W. Rep. (Minn.) 295; *Fontaine v. Sav. Inst.*, 57 Mo. 561; *Baile v. Ins. Co.*, 73 Mo. 371; *Lielke v. Knapp*, 79 Mo. 27; *Sexton v. Anderson*, 95 Mo. 373. (2) The decree is erroneous in disregarding the defense of homestead made by the answer and sustained by the evidence. *Kendall v. Powers*, 96 Mo. 142; *Orr v. Shraft*, 22 Mich. 260; *State ex rel. v. Iron Co.*, 88 Mo. 222; *Davis v. Land*, 88 Mo. 436; *Grimes v. Portman*, 99 Mo. 229; *Beckman v. Meyer*, 75 Mo. 333; *Vogler v. Montgomery*, 54 Mo. 577. The defense of homestead in such an action has been sustained in other states in the following cases, and the list is by no means complete: *Derby v. Weyrich*, 8 Neb. 174; *Officer v. Evans*, 48 Iowa, 557; *Aultman v. Heiney*, 59 Iowa, 654; *Addicken v. Humphal*, 56 Iowa, 365; *Payne v. Wilson*, 76 Iowa, 377; *Smith v. Rumsey*, 33 Mich. 183; *Rhead v. Hounson*, 46 Mich. 243; *Pulte v. Geller*, 47 Mich. 560; *Orr v. Shraft*, 22 Mich. 260. (3) The exemption clause in the act of March 25, 1875 (R. S. 1879, sec. 3296; R. S. 1889, sec. 6869), applied as well to money received by Dr. Leete on account of his wife's inheritance prior to the date of that act, as to the money received by him thereafter from the same source. *Nance v. Nance*, 84 Ala. 375; *Burns v. Bangert*, 92 Mo. 167; *Richardson v. Lowry*, 67 Mo. 411 (1878); *Bledsoe v. Simms*, 53 Mo. 305. (4) The will of

James Harrison impressed upon the bequest to Mrs. Leete the character of a separate estate. *Dugans v. Livingston*, 15 Mo. 151 ; *Morrison v. Thistle*, 67 Mo. 599 ; *Allison v. Chaney*, 63 Mo. 279 ; *Carter v. Alexander*, 71 Mo. 585 ; *Russell v. Eubanks*, 84 Mo. 82, and cases cited ; *Reinders v. Koppelman*, 94 Mo. 338 ; *Preston v. Brant*, 96 Mo. 556. (5) Without regard to the will of James Harrison, section 19, chapter 115, General Statutes of 1865 ( Wagner, p. 936 ), made by far the greater part of the money coming to Mrs. Leete prior to March 25, 1875, her separate estate, and exempt from the debts of her husband. This statute should be liberally construed. *Rogers v. Bank*, 69 Mo. 563 ; *Diver v. Diver*, 6 Smith ( Pa.) 106, 109 ; *Paver v. Lester*, 17 How. Pr. 413, 416 ; *Goss v. Cahill*, 42 Barb. 310, 315. (6) Dr. Leete did not exercise his marital right of reduction to possession as to any of the choses in action of his wife. *Barron v. Barron*, 24 Vt. 375 ; *Slade v. Barber*, 30 Vt. 191 ; *Standeford v. Devol*, 21 Ind. 404 ; *Machen v. Machen*, 28 Ala. 374 ; *Hind's Estate*, 5 Whart. 138 ; *Gochenaur's Estate*, 23 Pa. St. 460 ; *Pierson v. Smith*, 9 Oh. St. 554 ; *McCampbell v. McCampbell*, 2 Lea ( Tenn.) 661. (7) Under the circumstances of this case the wife's equity to a settlement was a sufficient consideration for the deed in question. *Smith v. Kane*, 2 Paige Chan. 302 ; *Wickes v. Clarke*, 3 Edw. Ch. 58 ; *Wickes v. Clarke*, 8 Paige Ch. 161 ; *Kenny v. Udall*, 5 Johns. Ch. 464 ; *Poindexter v. Jeffries*, 15 Grat. 363. (8) The circuit court, having found that there was a valuable consideration for the deed to Mrs. Leete's trustee, should have dismissed the petition. *Truesdell v. Sarles*, 104 N. Y. 164 ; *McGraw v. Gwin*, 7 Ired. ( N. C.) Eq. 55 ; *Bragg v. Stanford*, 82 Ind. 234 ; *Syracuse Plow Co. v. Wing*, 35 N. Y. 421 ; *Whann v. Atkinson*, 83 Ala. 592 ; *Bremmerman v. Jennings*, 101 Ind. 253 ; *Sibley v. Hood*, 3 Mo. 290. (9) The consideration for the deed was not only valuable but adequate under the correct method of tracing trust funds.

*Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514; "The Progress of Equity in Following Trust Funds," 31 Cent. Law Jour. 125 and 145. ( 10 ) If doubt exists as to the construction to be given to the act of Dr. Leete in executing and delivering the deed, such doubt should be resolved in favor of defendants. *Dallam v. Renshaw*, 26 Mo. 544; *Rumbolds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 534; *Page v. Dixon*, 59 Mo. 43; *Ames v. Gilmore*, 59 Mo. 537; *Webb v. Darby*, 94 Mo. 621. (11) Plaintiff's contention below that Dr. Leete having been married prior to March 25, 1875, the act of that date did not and could not affect his relation to property coming to his wife prior or subsequently to its passage, is not sustained by the better considered cases, either state or federal. *Henry v. Dilley*, 25 N. J. L. ( 1 Dutch.) 302; *Pritchard v. Bank*, 8 Lou. 130; *Goodyear v. Rumbaugh*, 13 Pa. St. 480; *Johnston v. Johnston's Adm'r*, 31 Pa St. 451. ( 12 ) As a rule of evidence the act of March 25, 1875, applied to all personal property, theretofore or thereafter acquired, in the manner therein stated, by women then married. *Ins. Co. v. Hill*, 86 Mo. 466; *Coe v. Ritter*, 86 Mo. 277; *St. Louis v. Œters*, 36 Mo. 456; *Rogers v. Bank*, 69 Mo. 560; *Rieper v. Rieper*, 79 Mo. 352; *McCoy v. Hyatt*, 80 Mo. 130. ( 13 ) Mrs. Leete is not estopped from claiming title in her trustee, under the pleadings and evidence in this case. Facts relied upon as an estoppel *in pais* must be specially pleaded. *Bray v. Marshall*, 75 Mo. 327; *Noble v. Blount*, 77 Mo. 235; *Hammerslough v. Cheatham*, 84 Mo. 21; *Railroad v. Levy*, 17 Mo. App. 509; *Bank v. Jennings*, 18 Mo. App. 657; *Kennedy v. Klein*, 19 Mo. App. 19; *Miller v. Anderson*, 19 Mo. App. 71, 75.

BLACK, J.—The plaintiff, as purchaser of real estate at an execution sale, brought this suit to set aside a deed from defendant, James M. Leete, to defendant Simmons, conveying the property in dispute to Simmons

in trust for the use of the wife of said Leete, on the ground that the deed was made in fraud of creditors. The record is lengthy, and it is deemed advisable to here state the case in its outline, leaving the details of the evidence to be narrated in connection with the questions to which it relates.

James Harrison died leaving a large estate, and, by his will which was probated in 1870, devised one-fifth of his estate to his daughter, Cordelia. On the twenty-eighth of June, 1871, she married the defendant, James M. Leete, who was a physician, having property of no greater value than $3,000, and an income of not exceeding $1,000 per annum. Edwin Harrison was the executor of the will, and as such paid over to Dr. Leete from time to time, from 1871 to 1884, not less than $250,000. In addition to this he turned over to Mrs. Leete on the twenty-ninth of September, 1876, stocks and bonds amounting, face value, to $263,740.

Dr. Leete purchased the property now in question in September, 1873, and took the title in his own name. He paid for it $12,000, one-fifth in cash and the residue by his individual notes due in one, two, three and four years, and secured the same by a deed of trust on the property. The cash payment was made by a check of the executor payable to Dr. Leete and charged to Mrs. Leete on account of her distributive share in her father's estate. The subsequent payments were made from the funds received from the executor.

Dr. Leete built a residence upon the property at a cost of $40,000, and paid for the same from August, 1875, to August, 1876, by checks drawn on funds received by him from the executor on account of his wife's inheritance. He was a stockholder and officer of the Harrison Wire Company, and he indorsed the paper of that company to a large amount. On the twelfth of December, 1883, the Harrison Wire Company made its note for $25,000 due in six months, payable to Dr. Leete, which was indorsed by him, Augustus B. Hart

purchased the note, and when it became due it was renewed for five days. It remained unpaid on the ninth of December, 1884, at which time Dr. Leete owed other large sums of money, and he and the Harrison Wire Company were then insolvent. On that day he made the deed now in question to Simmons, conveying the property in suit to Simmons in trust for Mrs. Leete. The deed professes on its face to be made in consideration of $5, and for the further consideration that the money which paid for the property and the improvements "was money, income, increase or profits of personal property belonging to" Mrs. Leete.

Augustus B. Hart recovered judgment on the note against Leete in January, 1885, under which the property was sold, and the plaintiff, Oliver A. Hart, became the purchaser in March of the same year. The defendants caused notice to be promulgated at the sheriff's sale to the effect that the property belonged to Mrs. Cordelia Leete.

The case was heard by a referee who made report to the effect that the deed should be set aside, because made in fraud of creditors, to the extent of six hundred and twenty-four-thousandths of the whole title. Numerous exceptions were filed to the report by both sides, but they were all overruled, and the report confirmed, and both sides appealed to this court.

1. The defendants on their appeal insist that the will of James Harrison impressed upon the property devised and bequeathed to Mrs. Cordelia Leete a separate estate. As to this the will is in these words : "To my two daughters, Cordelia Harrison and Medora Harrison, I give and bequeath to each one-fifth part of my entire estate, real and personal in their own rights."

It is well-settled law that no particular or technical words are required to create a separate estate. Any words which negative or exclude the marital rights of the husband will be sufficient. On the other hand, the marital rights of the husband to the property of his

wife will not be excluded by mere inferences or conject-
ures.  The intent to exclude his common-law rights
must be clearly expressed.  A necessary implication
will be sufficient; but the purpose to create a separate
estate must clearly appear.  *Garner v. Jones*, 52 Mo.
68; *Paul v. Leavitt*, 53 Mo. 595; *Morrison v. Thistle*,
67 Mo. 596 ; 2 Story's Eq. Jur., sec. 1381.  The words,
"in their own rights," do not create a separate estate.
They utterly fail to show or disclose any purpose on the
part of the testator to deprive future husbands of the
daughters of their marital rights.  No case to which
we have been cited goes to the extent of saying that
such language will create a separate estate.

2.   It will be seen from the foregoing statement that
it becomes important to know to what extent Leete paid
for the property in question, and the improvements
thereon out of his own means, and this question must
be resolved by ascertaining to what extent he became
the owner of the money which he received from the exec-
utor on account of his wife's inheritance.   In view of
the different statute laws of this state, at different
periods of time, concerning married womem, it will be
necessary to first confine the inquiry to the time prior
to March 25, 1875.   Up to that date Dr. Leete received
from the executor about $117,000.   The money was
paid to him from time to time out of moneys collected
by the executor from various sources ; but nearly eighty
per cent. of the collections were dividends on stocks
and interest on bonds, the estate owning the stock and
bonds.   The point now made is that the money received
by Leete from the executor and which the executor
received from such sources was the separate estate of
Mrs. Leete by force and operation of section 19, chapter
115, General Statutes of 1865, which enacts :  " Any prop-
erty consisting of stocks and bonds of any kind, given
by a parent to a daughter, shall, with the proceeds
thereof, belong to such daughter, if married, *in her
own right*, and shall not be subject to the payment of

the debts of her husband, and may be disposed of by such married daughter the same as if unmarried ; such bonds or stocks, however, shall be subject to the proviso in section 14 of this chapter."

This section became the law of this state for the first time in 1865. It and several other sections of the same chapter were copied from the Vermont statutes. We do not find that the supreme court of that state has ever had this particular section under consideration, so that we get no aid from that source. It is our opinion the section has no application to the case in hand. It contemplates a gift of bonds and stocks, as such. It applies and applies only to those cases where there is a gift of bonds and stocks in kind, and was never designed to apply to cases where there is no gift of any specific property. In other words it enables the parent to make a provision for the daughter by a specific gift of such property. Here the testator simply gave his daughter one-fifth of his entire estate. It so transpired that after the payment of the debts there were stocks and bonds which could be and were divided. Before the incidents mentioned in the section will attach, it must appear that there was a specific gift of the stocks or bonds. We do not see how any other construction can be given to the statute.

3. With the foregoing conclusions it becomes necessary to determine whether Dr. Leete became the owner of the money received by him prior to March 25, 1875, and this depends upon the question whether he reduced the same to his possession.

It is often said that by the common law the marriage vests absolutely in the husband all articles of personal property then owned or thereafter acquired by the wife ; but under the influence of equity rules it is well settled that the husband may waive his right to his wife's personal property, and permit her to retain the same free from any claim on his part. *Botts v. Gooch*, 97 Mo. 88, and cases cited. But the wife's

choses in action stand on still a different footing. They do not in any case vest in the husband by virtue of the marriage alone ; but he has the right and power to reduce them to his possession, and when this is done, and not before, he becomes the owner of them. A legacy or a distributive share accruing to the wife is a chose in action. *Leakey v. Maupin*, 10 Mo. 368 ; 2 Kent [ 13 Ed. ] 135. As a general rule the receipt by the husband of the money due upon the wife's chose in action will constitute a reduction to his possession. 1 Bishop on Married Women, sec. 114. But he may collect and invest the money for her, and if he receive the money for her and promise to account to her or her trustee therefor, she may claim the fund as her own, even as against his creditors ; for an appropriation so made would not amount to an appropriation to his own use. *Terry v. Wilson*, 63 Mo. 493. While there is some diversity of opinion concerning the intent of the husband, the better view, according to Bishop, is that the mere receiving, by the husband, of the wife's property will not be such a reduction of it to his possession as will affect the wife's survivorship, or her equity to a settlement. To have that effect he must receive it solely in the exercise of his marital rights, and for the purpose of appropriating it to his own use. Bishop on Mar. Woman, sec. 119. When the husband collects the money due upon his wife's chose in action, not as agent or trustee, but for the purpose of devoting it to his own use, there can be no doubt but this constitutes a reduction to his possession, and the money then becomes his own and liable for his debts.

Now the principal claim on the part of the defendants is that Dr. Leete in collecting these moneys, and in investing the same, acted for and as the agent of his wife, and hence the money at all times continued to be her property. It appears he received various amounts of money from the executor during what is called each settlement year, and at the close of each year, when it

became necessary for the executor to make settlement with the probate court, these various payments were consolidated, and he and his wife joined in one receipt to the executor. As to the disposition of the moneys, the referee made the following findings, which are well supported by the evidence: "Upon the receipt of these moneys Dr. Leete apparently used them as if they were his own. Some he used for personal expenses and the support of his family. He invested portions of them on his own account, or name, in securities. Collected and used the earnings and sold the securities and used the proceeds. He invested some of these moneys in various business companies, in his own name, and in some instances thus lost them. If the moneys were idle he kept them deposited in bank, in his own name, and he purchased the land here in question in his own name, and used some of these moneys towards paying for it and erecting the dwelling thereon. He did nothing in the name of his wife, nor had he any agreement with her as to the use of the moneys, but continued his operations in much the manner indicated, until the period and time he conveyed this property to his wife's trustee, a period of ten or eleven years."

It is very true Dr. Leete testified that he received the moneys and invested them as the agent of his wife, and that he never intended to make them his own property, and this evidence must be considered with the other evidence in the case. Still the uncontradicted evidence is that he collected the moneys, made no report to his wife and was asked to make none; kept no separate account of the funds thus received, purchased stock in various corporations in his own name, and had a financial standing in the community where he resided. We have read and re-read the evidence, and we do not find a single circumstance to support the assertion that he acted for and as the agent of his wife. The long series of acts show and they show conclusively that he received the funds and appropriated them by virtue of his marital

rights, and the claim now made that he was all the while acting as the agent and trustee of his wife must be an afterthought. That he reduced the $117,000 to his own use is too clear to admit of any doubt. The property in question belonged to Dr. Leete to the extent that the land and improvements were paid for out of the moneys. so appropriated to his own use.

4. We then come to the act of March 25, 1875, now section 3296, Revised Statutes, 1879. This act did not attempt to reinvest the wife with title to property which the husband had reduced to his possession, nor was it within the power of the legislature to deprive him of property which had become his own. Property which he had acquired by the exercise of his marital rights, at the date of that act, continued to be his property and subject to the payment of his debts. These propositions are too plain to admit of any doubt.

But the evidence shows that Dr. Leete continued to receive moneys from the executor after that date the same as before. Indeed, there was no change in the manner of receiving and investing the money. In view of these facts the plaintiff insists, on his appeal, that he should have had a decree for the entire property. It is claimed, among other things, that the act of 1875 did not undertake to divest the husband of his marital right to appropriate to his own use debts due to his wife; and, if it did, then it is unconstitutional and void.

The act speaks of any personal property including rights in action "belonging to any woman at her marriage, or which may have come to her during coverture." All such property "shall be and remain her separate property and under her sole control."

There is no exception made for cases where the marriage relation existed at the date of the act, and we have no power to make one not made by the act itself. It secures to the wife her personal property and rights in action, and there can be no doubt but it applies to all cases where the husband had not, at the date thereof,

possessed himself of his wife's personal property, no matter when the marriage took place.

The question then arises whether the act is constitutional in its application to those cases where the marriage relation existed at its date. It is said to be unconstitutional because it impairs the obligations of contracts, and because it is retrospective. It is perfectly obvious that if it is objectionable on either of these grounds it is because the right of the husband to his wife's personal property and to reduce her choses in action to his possession is a vested right. In the present case we are only called upon to say whether this common-law right of the husband to collect and appropriate to his own use debts due to his wife is a vested right.

On this question the courts are not agreed. In New York it is held that a right to reduce a chose in action to possession is one thing, and the right to the property thus acquired is another thing, but that they are both equally vested rights. *Watervelt v. Gregg*, 2 Kernan, 202. The following cases reach the same conclusion, namely, that the right of the husband to obtain his wife's choses in action is a vested right: *Sterns v. Weathers*, 30 Ala. 712 ; *O'Conner v. Harris*, 81 N. C. 279 ; *Sperry v. Haslam*, 57 Ga. 412 ; others lead to the same result. It is insisted that this court long ago asserted the same rule in the case of *State, etc., v. Fry*, 4 Mo. 120. The question in that case was whether an act of the legislature granting a divorce was constitutional. While some of the arguments used in the opinion of one of the two judges who participated in that judgment favor strongly the doctrine just stated, still the case then in judgment is not in point here. We cannot take arguments for a solemn adjudication. The real point ruled was that the granting of a divorce was a judicial act, and that the legislature did not possess judicial powers.

On the other hand many well-considered cases hold that the right of the husband to reduce his wife's choses in action to possession is not a vested right, so as to be out of legislative control. *Clark v. McCreary*, 12 S. & M. 347; *Executor of Henry v. Dilley*, 1 Dutcher, 362; *Goodyear v. Rumbaugh*, 1 Harris, 480; *Mellinger's Adm'r v. Bausman's Trustee*, 45 Pa. St. 526. In the last case it was said: "But the marital right of a husband over his wife's chose in action * * * never was an interest in it. It was no more than succession to her dominion. * * * He had nothing more than a naked power. No interest in the chose vested in him until he had exercised his power by applying it to his own use. No vested interest, no right of property of his, is then interfered with, though the act of 1848 takes away his dominion over a chose in action possessed by his wife when the act was passed." And it is in substance said in the case cited from 12 S. & M., that this right of the husband is simply a qualified one and is upon the condition that he reduce the chose into possession during coverture, and it is indispensable that such condition precedent should take place before there is any vested right.

Sedgwick in speaking of rights with which the legislature may not interfere says: "But, when we leave the subject of vested interests in real estate or actual property in possession, we find the subject surrounded with difficulty." Sedg. on Construction of Const. and Stat. Law [2 Ed.] 653. There are certainly many rights and privileges which are not vested. Thus a mere expectation of property in the future is not a vested right. Hence the rules of descent may be changed before the property passes to the heir. The right of the husband to secure his wife's rights in action may be exercised or not at his election. Until the right is exercised the chose is vested in her, not in him. Should he die without recovering the thing in action, it belongs to the

widow, the same as before the marriage, and his repre-
sentatives have no interest in it. When the husband
asks the assistance of a court of equity to obtain pos-
session of his wife's rights in action, he may be compelled
to make provision for her support, which could not be
done if he had an absolute right to the thing in action.
From these considerations it appears to us the right of the
husband to reduce his wife's choses in action to posses-
sion is merely inchoate and not a vested right. Bishop
says marriage does not, at common law, vest the wife's
choses in action in the husband, as it does an article of
personal property in her possession. 2 Bishop on Mar-
ried Women, sec. 45. Supported as we are by a line of
well-considered cases, and by at least one text-writer,
we are of the opinion that the common-law right of a
husband to reduce his wife's choses in action to his pos-
session is not a vested right; and that the act in ques-
tion is constitutional, even in its application to
marriages existing at its date.

5. According to the terms of that act it does not
affect the title of the husband to any personal property
reduced to his possession with the "express assent" of
the wife; but it is also enacted that the property shall
not be deemed to have been reduced to his possession
by his use, occupancy, care or protection, and her
assent must be *in writing* giving him authority to sell,
incumber or dispose of the same for his own use and
benefit.

In the early case of *Rodgers v. Bank*, 69 Mo. 562,
it was said concerning this statute: "To put an end
to all investigations, the law plainly requires the assent
of the wife to be in writing." In *Broughton v. Brand*,
94 Mo. 169, the husband invested his wife's money in
real estate taking the title in his own name, with her
knowledge and verbal consent, and it was ruled that he
held the title in trust for her and after her death for her
heirs, and they were allowed to recover the property.
And in *Gilliland v. Gilliland*, 96 Mo. 522, it was said

the only way the husband can acquire any interest in the proceeds of the sale of his wife's land is the method pointed out by the statute, namely, by procuring her assent in writing.   Applying the principle of these cases to the case in hand, it follows that Dr. Leete did not become the owner of any of the money received from the executor after the passage of the married woman's act of 1875, and that he held the property in question in trust for her to the extent of all of the payments made out of moneys received after that law took effect. This interest the referee found to be three hundred and seventy-six-thousandths, and that finding we approve. To that extent the deed from Leete to Simmons must stand.

The question whether Mrs. Leete ought, as between her and her husband's creditors, to be estopped from asserting title to the property by reason of her acquiescence in the continued use of her funds by her husband is not pressed in this court by the plaintiff, and need not be considered, though much is said in the brief of defendants upon that subject.

6.   It is conceded by the plaintiff that the homestead right to the extent of $3,000 did not pass to him by the sheriff's deed, but it is insisted that the homestead should be taken out of the wife's interest in the property.   A case is then presented where one parcel of land is the homestead, in which the wife has an interest, and in which the husband has an interest, each interest exceeding in value the homestead exemption, and the husband is the debtor.   The question is, from whose interest must the homestead be taken?   According to the plain letter of the statute the homestead of the head of a family is exempt from attachment and execution. Dr. Leete was the head of a family and the execution debtor, and to him the law secures the exemption.   No reason is seen why this exemption should be cut down because his wife has an interest in the same property. In this case the homestead cannot be severed, so that

the property must be sold and the proceeds apportioned, or other proceedings had according to section 2698, Revised Statutes, 1879. Had Dr. Leete not made the deed to Simmons he would be entitled to the $3,000.

Now we have held that the creditors have nothing to do with the homestead, for it is beyond their reach at law or in equity. As to them there can be no fraud in the disposition of the homestead. *Davis v. Land*, 88 Mo. 437 ; *Grimes v Portman*, 99 Mo. 229 ; *Kendall v. Powers*, 96 Mo. 142. The homestead interest, therefore, passed to Simmons, who holds the same in trust for Mrs. Leete. This interest the court disregarded in its decree, and in that it erred.

7. But the defendants insist that the deed should not have been set aside as to any part or portion of the property, and one reason assigned is that Mrs. Leete had a right to a settlement for the benefit of herself and children out of her choses in action. The doctrine of a wife's equity to a settlement can have nothing to do with this case. When the wife's funds have by right fully vested in the husband, no court has the right to divest them for the purpose of making a settlement for her support. 2 Bishop on Married Women, sec. 629 ; 2 Kent, 142. The wife's equity to a settlement out of her things in action does not embrace those which the husband has fully reduced into his possession, 3 Pom. Eq. Jur., sec. 1116. Besides all this, Mrs. Leete has bonds and stocks to the amount of $200,000 or $300,000 which she received as part of her inheritance, so that she had abundant means of support.

8. For the defendants it is further contended that Leete owed his wife a large amount because of his use of her money ; that he had a right to pay this debt due to her, and that the deed to Simmons as trustee should be upheld on that consideration.

That deed antedates the judgment under which plaintiff purchased the property, and, if it was made in good faith in payment of a debt due the wife, it should

stand ; for a debt due to the wife stands on as good footing as a debt due to any other person, and she may be given a preference over other creditors. But there are several reasons why the defense now suggested cannot prevail in this court. In the first place the answer excludes the notion that Mrs. Leete took the property in payment of any debt due to her from her husband. It states time and again that he purchased the property and made the improvements with her money, and as her agent and trustee, and not otherwise. The claim set up in the answer is that she was the equitable owner of the property by reason of the fact that her, and not his, money paid for it. Indeed, the case was not and could not have been tried on the theory that she took the property in payment and satisfaction of a debt due to her. We can only review the case made by the pleadings.

But the proof, as disclosed by the present record, does not sustain the theory of fact that she took the property in payment of any debt due to her. While the evidence of Dr. Leete tends to show that he lost some $200,000 by indorsements for the Harrison Wire Company, still it is impossible from this record to say how much of that amount was his money or how much her money.

We have seen that $117,000 of the money received from the executor became his absolute property, and that a large portion of that amount was lost in the wire company venture is clear and beyond doubt. In the early part of 1884, which was nearly a year before the date of the deed to Simmons, Leete turned over to his wife a large quantity of stocks in various corporations, but there is no evidence as to the value of the stocks thus turned over to her, nor that they were taken by her at any specified price. On the theory that Leete became her debtor, there is nothing to show how much he owed her at the date of the deed to Simmons,

nor to show that that deed was made in payment of any specified amount.

The whole case is simply this : From 1871 to 1884 Dr. Leete received the various sums of money from the executor and used them in various ventures as his own and on his own account, but when the crash came in 1884 he took the position that the property in his name belonged to his wife, without regard to the fact whether the property had been acquired with money received prior or subsequent to March 25, 1875. Mrs. Leete says she did not request her husband to make the deed, but that it was made with her approval. Her evidence is plain, direct and trustworthy and shows clearly that the deed was not made in payment of any debt. It was made on the theory of the consideration recited in the deed, namely, that the property was paid for with money belonging to Mrs. Leete, and, therefore, her property. To the extent that the property was paid for by Leete's money it was not her property at law or in equity. That the property in question was conveyed to Simmons for the purpose of placing it out of the reach of creditors, and not for the purpose of paying a debt due to the wife, is we think clear. Such a transaction could not stand as against creditors when made between two persons not sustaining the marriage relation, and it ought not to stand as against the creditors when made between husband and wife, except to the extent that the wife's money paid for the property.

The judgment of the circuit court setting aside the deed to Simmons to the extent of six hundred and twenty-four-thousandths must be modified so as not to include the homestead right. That modification will be made here. In all other respects the judgment is affirmed. Each party will pay half of the costs in this court. BARCLAY, J., not sitting, the other judges concur.