JOHN T. KIMBERLIN, Plaintiff, SUSIE B.GRAHAM, Assignee, Appellant, v. H. C. GORDON, Defendant, GRANT U. BROWN, Garnishee, and G. TEE-GARDEN, Interpleader, Respondents.

**Kansas City Court of Appeals, November 15, 1909.**

1. **HOMESTEAD: Judgments: Lien.** The owner of a homestead had the right to sell the same and the purchaser thereof takes the property free from the lien of any judgments on demands originating after the homestead was acquired, and the proceeds of the sale are not subject to garnishment.

2. **TRIAL PRACTICE: Appeal.** Where no declarations of law are given, or requested at the trial, by the court, it is immaterial on appeal from a judgment that is proper on its merits on what theory the case was tried, and the findings of fact by the court, if supported by evidence, are conclusive and will not be disturbed.

Appeal from the DeKalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

Affirmed.

*K. B. Randolph* and *W. M. Fitch* for appellant.

The debt evidenced by the judgment in favor of Elijah M. Groom was created before the defendant put on record his deed to the land known as the sixty-six acres. For that reason, neither defendant nor his grantee for him, could claim a homestead right therein. R. S. 1899, sec. 3622. The fact that Mrs. Graham, the appellant, was surety on these notes does not change the statutory rule above mentioned; but the debt dates

from the original date of the note. Berry v. Ewing, 91 Mo. 395. The liens of these judgments were in full force against the sixty-six acres at the time the proceeds of sale came into the hands of the garnishee. R. S. 1899, sec. 3714. The sheriff's deed to H. C. Gordon and Florence Gordon, husband and wife, to the sixty-six acres did not create a tenancy of the entirety with incidental right of survivorship. The sheriff had no power to create such an estate. The deed shows that they were simply joint purchasers. The sheriff's deed is not a deed of "grant, bargain and sale," and consequently does not create such estate. R. S. 1899, sec. 4600. To create such estate under the statute the land must be granted or devised. Holmes v. Kansas City, 209 Mo. 523, bottom of page. Wilson v. Frost, 186 Mo. 311; Harrison v. McReynolds, 183 Mo. 538. If such a deed did create such tenancy H. C. Gordon could not by taking such a deed put his property out of the reach of his creditors.

*Hewitt & Hewitt* for respondent.

The debts upon which the judgments were founded were the debts of H. C. Gordon alone, and were contracted long after the marriage to Florence and the acquirement of the eighty acres described as the west half of the southeast quarter of section 10, township 58, rang No. 32, DeKalb county, Missouri, by deed from Dallas C. White to H. C. Gordon and Florence Gordon, dated December 8, 1899, consideration $——, subject to the $1,600 trust deed executed by White to the Prudential Insurance Company. Florence furnished all the consideration for this deed, viz., $500 cash, and the Clarksdale dwelling property valued at $600. H. C. Gordon did not furnish nor pay a dollar of the consideration; while it is true he put in a stock of furniture for $800, mortgaged for $800, he immediately gave a trust deed to W. B. Brooks on the land for $800,

thereby transferring the lien to the land, and when the eighty acres was sold by Gordon and wife, Florence, it was subject to the two trust deeds, the one for $1,600 and the one for $800. Both in fact and in law H. C. Gordon never did have any interest in the land. Mrs. Gordon's rights were recognized and provided for by the deed to Asa A. Morton, and then from Asa Morton back to H. C. Gordon and Florence Gordon with the recitations therein, that Florence had $1,100 over and above H. C. Gordon in said lands. R. S. 1899, sec. 4340; Jones v. Elkin, 143 Mo. 647, and cases cited therein.

BROADDUS, J.—By the written agreement of parties, the three cases, were submitted to the court sitting as a jury. The agreement further provided that a verdict should be rendered disposing of the issues in each case separately. All are proceedings in garnishment under executions issued under three different judgments.

The first in favor of John T. Kimberlin against H. C. Gordon, was rendered by the circuit court of DeKalb county, February 9, 1906, on a note dated February 16, 1904.

The second is in favor of George Shrenk against said Gordon on a note dated January 3, 1905, and transcript of which was filed in the circuit clerk's office January 20, 1906.

The third was in favor of Elijah Groom against H. C. Gordon, rendered May 15, 1906, on a note dated March 22, 1902.

Each of said judgments have been assigned to Susie B. Graham upon which the executions were issued to her use, and Grant U. Brown who had in his hands certain money alleged to be the property of the defendant H. C. Groom, was summoned as garnishee. The answer of the garnishee disclosed that George Teegarden claimed the fund, whereupon he was made a party. He made answer claiming said money. The plaintiffs re-

plied denying such ownership and the issue thus made was tried by the court. The finding in each case was in favor of the interpleader. The plaintiffs appealed.

H. C. Gordon, the judgment debtor, was married to Florence, his present wife, in October, 1899. She was a widow and at the time of the last marriage had about $1,000 she had realized from a policy on the life of her deceased husband; she also claimed to be the owner of a dwelling in Clarksdale but the title to which was in her late husband; and she was also the mother of three children.

On December 8, 1899, she and her then husband, the defendant, traded with Dallas C. White for eighty-acres of land in DeKalb county which was encumbered by a trust deed for $1,600, for the benefit of the Prudential Life Insurance Company. She claims that in payment for the land she put in the said dwelling at the valuation of $600, $500 in money, and the defendant put in a stock of goods at $800 which were encumbered by a mortgage for that amount. It was shown that on the 11th day of December, 1899, defendant transferred the debt from the stock of goods by giving a lien on the land, whereby the lien on the goods was released. The deed from Dallas and wife was made to defendant and his wife. They moved onto this land and occupied it until they sold it to one Dyers in January, 1902.

On the 4th day of March, 1901, Florence and the defendant for the expressed consideration of $3,500, conveyed the land to Asa Morton subject to the encumbrance to the said insurance company and the $800 trust deed aforesaid. On the same day the said Morton reconveyed the land to defendant and his wife Florence also for the expressed consideration of $3,500, and also subject to the foregoing encumbrances. The deed contained the following recitations: "Subject to a trust deed to the Prudential Life Insurance Company, for $1,600; also subject to a trust deed given to W. B. Brooks for $800, and also the said Florence to have

extra over and above, H. C. Gordon, eleven hundred dollars."

In January, 1902, H. C. Gordon and wife, Florence, sold this eighty acres to F. N. and Albert Dyer for thirty-four hundred dollars, subject to two deeds of trust, the one for sixteen hundred and one for eight hundred dollars. Mrs. Gordon placed one thousand dollars of the money in the Bank of Clarksdale, where it remained until the purchase of the sixty-six and one-half acres in question, which was purchased at a partition sale July 2, 1902, at the price and sum of $2,706, which $1,000, was paid on the purchase, and $1,700 was furnished by the Bank of Clarksdale, until a loan could be negotiated from the Hoagland Loan & Investment Company. Said loan was secured by a trust deed on the land. The deed to the sixty-six and one-half acres was taken in the names of H. C. Gordon and Florence Gordon, his wife; they moved onto this land and continued to occupy it until they sold it to the interpleader, George Teegarden, subject to the two trust deeds then upon it, for $1,700 and $425 respectively. Shortly after the execution of the $1,700 trust deed to the Hoagland Loan & Investment Company, H. C. Gordon borrowed for his own use $425 from A. J. Dean, and secured said loan by a second mortgage on this same tract, and when the $425 loan came due, he borrowed the same amount from Mr. L. L. Chappelle and took up that loan and secured Mr. Chappelle by a like mortgage.

On the 20th day of May, 1907, H. C. Gordon and wife, Florence, sold and conveyed to the interpleader, George Teegarden, the land in question, for the expressed consideration of thirty-six hundred and thirty dollars, and executed a warranty deed therefor, containing the following recitation, "Subject to one trust deed executed by the grantors to Benjamin R. Vineyard, in trust for the Hoagland Loan & Investment Co., for seventeen hundred dollars, date October 31, 1902." "Also subject to trust deed executed by the grantors herein to

Grant U. Brown in trust for Lorenxo L. Chappelle to secure $425." The purchase price of this land over and above the amount of the two incumbrances recited and referred to in their deed to Teegarden, something like $1,400 was paid to H. C. Gordon by Teegarden at the Bank of Clarksdale, and by Gordon delivered to his wife Florence. Immediately after the payment of the money by Teegarden to Gordon, R. A. Hewitt, who was holding the deed in escrow, was directed by Gordon and Teegarden to file same for record which was done, and the deed delivered to Teegarden. The $425 due L. L. Chappelle having become due, default in the payment having been made, the land was advertised under the trust deed and sold on the 28th day of October, 1907, at which said sale George Teegarden, and the attorney representing Mrs. Graham, the execution creditor of H. C. Gordon, were the only bidders, and the land was knocked down to Teegarden at the sum of $2,350. On the same day the three executions in evidence were issued. Brown refused to execute the trustee's deed until Mr. Teegarden paid the amount of his bid. Whereupon, Teegarden (the interpleader) paid the amount of his bid, and after the debt, interest and costs of the sale were paid, there remained in the trustee's hands $1,844.

The appellants challenge the correctness of the statement that Mrs. Gordon put into the land purchased from Dallas White the sum of $1,100. The purchase price of the land was $3,200. There was an encumbrance on it for $1,600. Gordon put in his stock of goods for $800, and Mrs. Gordon claims she put in $500, cash and house in Clarksdale at $600, whole amount thus said to be paid $3,500, or $300 more than the purchase price. Appellant claims from these figures that she could have only put into the land the $500, in cash, therefore she did not have $1,100 to invest in the sixty-six 50-100 acres, the proceeds of which are in controversy. And further more the testimony goes to show that the house in Clarksdale was the property

of her former husband and that the administrator sold it for the purpose of paying his debts, and the records show the latter fact. But it further appears that Mrs. Gordon claimed to be the owner of the house. It was not shown that the money received by the administrator was applied to the payment of debts. If it had been so applied it was within the power and it was the duty of appellants to have so shown. The report of sale recites that the purchaser at said sale was Dallas White. The statement of respondent is that in order to vest the title to the house in White as a part of the consideration for the land, the order of sale to pay debts was resorted to. Under the evidence it was a question of fact for the court. Appellants contend that it is not reasonable to infer that the administrator would indulge in such an unwarranted proceeding. And in the absence of evidence the inference would be that he did not. But evidence of the most positive kind shows that he did. And it is just as positive as that which goes to show that Gordon put in his $800 stock of goods as a part of the consideration. There is the discrepancy of $300 remaining over paid for the land. The evidence does not disclose of what it consisted. The court found from the statement of witnesses, that it was not to be attributed to Mrs. Gordon's share of the payments. We conclude that the finding was based upon the preponderance of the most credible evidence and as such is binding on this court.

The evidence shows that the interpleader was to pay for the sixty-six 50-100 acres of land $3,960. Of this sum he paid $1,480, to Florence the wife, and the two encumbrances on the land which he paid amounted to $2,125, making a total of $3,605 paid, which left in the hands of the garnishee $355, which appellant claims is subject to the garnishment in any view of the case.

The interpleader contends that defendant as a matter of fact had no interest whatever in the land. In the purchase of the eighty acres he put in as pay-

Kimberlin v. Gordon.

ment $800 worth of goods which were mortgaged for that amount. This mortgage he discharged by placing a deed of trust on the land for a similar amount which he never paid. This the evidence seems to bear out.

But as the court found that defendant had an interest in the land, and admitting such to have been the fact the interpleader contends that the surplus in his hands of $355, which represents that interest was not subject to the garnishment as it was the proceeds derived from the sale of defendant's homestead. The eighty-acre tract was occupied by defendant and wife as a homestead until they sold it in January, 1902. The proceeds of this sale was the only money that went into the purchase of the sixty-six 50-100 acres in July, 1902. Upon this land defendant and wife made their home until it was sold to the interpleader. However just shortly before such sale defendant made an entry on government land in the State of Colorado. Appellant insists that by so doing the defendant abandoned his homestead right to the land in controversy. But we think not. It is true his conduct was such as to indicate that such was his intention. It cannot be said that because of such intention that there was any actual abandonment. That could only have occurred by some overt act such as actually moving away from it without any intention to return. He did not give up his possession until he sold to interpleader. [Smith v. Bunn, 75 Mo. 559; Duffey v. Willis, 99 Mo. 132.]

There can be no question that a homesteader may sell his homestead and that the purchaser steps in to his shoes and takes the property free from the lien of all judgments on demands originating after the acquisition of the homestead, or homestead purchased with the proceeds of the former. The surplus was a part of the proceeds of defendant's homestead and as such was not subject to garnishment.

Plaintiff contends that as the estate in the land held by defendant or his wife, not being an estate by entirety, it cannot be considered as a homestead. As there was not the usual granting clause in the deed to defendant and wife, under the authority of certain decisions, it is true they cannot be considered tenants by entirety. [Wilson v. Frost, 186 Mo. 311; Harrison v. McReynolds, 183 Mo. 533.] But the recitation in the deed constituted them tenants in common. [Idem.] A homestead in the husband may attach to an estate in land held by husband and wife where they both own an interest in the same. [Hart v. Leete, 104 Mo. 315.]

Appellant insists that interpleader should not be heard on this phase of the question, because he makes the claim for the first time in this court. However that may be, the record shows that there were no declaration of law given or asked and we cannot know upon what theory interpleader submitted his case, or upon what theory the court decided it. We hold as the trial court did, in effect, that the surplus proceeds of the sale of the equity of redemption of defendant and his wife were not subject to garnishment under the judgments, and it is of no consequence to us upon what theory the cause was tried and judgment rendered; even should it have been misconceived, we must uphold it if it is the progeny of good law.

A controversy arose also over some personal property, part of which was claimed by the wife and a part by her son. It is insisted that the evidence did not justify the finding. But as there was some evidence to support it we will not disturb it. It is ordered that each of said cases be affirmed. All concur.